LIDDLE & DUBIN, P.C.
Laura L. Sheets (*Pro Hac Vice*)
Nicholas A. Coulson (*Pro Hac Vice*)
975 E. Jefferson Avenue
Detroit, Michigan 48207
Phone: (313) 392-0015
Fax: (313) 392-0025
lsheets@ldclassaction.com
ncoulson@ldclassaction.com

EVANS LAW FIRM, INC.
Ingrid M. Evans (CA Bar No. 179094)
3053 Fillmore Street #236
San Francisco, California 94123
Phone: (415) 441-8669
Fax: (888) 891-4906

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## FRESNO DIVISION

| | |
|---|---|
| DONNA CONROE, ALLEN CONROE, and KIMBERLY TAPSCOTT-MUNSON, Individually and on Behalf of all others similarly situated,<br><br><br>          Plaintiffs,<br>     -v-<br><br><br>DARLING INGREDIENTS, F/K/A/ DARLING INTERNATIONAL, INC.,<br><br><br>          Defendant, | No. 1:14-CV-01128-MCE-SMS<br><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br><br>Date: May 5, 2016<br>Time: 2:00 p.m.<br>Courtroom: 7<br>Hon. Morrison C. England, Jr. |

## **Table of Contents**

INDEX OF AUTHORITIES ......................................................................................................... ii

I.      INTRODUCTION AND FACTUAL BACKGROUND ................................................. 1

    A. Defendant Operates an Animal Rendering Plant That Generates
       Odors Which Plaintiffs Allege Are Inadequately Controlled
       and Therefore Dispersed Into Plaintiffs' Neighborhoods ......................................... 2

    B. Plaintiffs Allege That Their Basic Right to Use and Enjoy Their
       Homes Has Been Repeatedly Violated by Defendant's Emissions ........................... 3

    C. Plaintiffs Propose to Try This Case on Behalf of a Class in Three Phases .............. 4

II.     ARGUMENT

    A. This Case Should be Certified as a Class Action Under Fed. R. Civ. P. 23 ............. 6

       1.  The Four Requirements of Rule 23(a) are Satisfied. .......................................... 6

             a.      The Proposed Class is so Numerous That Joinder of all
                    Members is Clearly Impracticable .......................................................... 7

             b.      There are Numerous Questions of Fact and Law Common
                    to all Members of the Class ..................................................................... 7

             c.      The Claims of the Named Plaintiffs Are Typical of
                    the Claims of the Class ............................................................................ 8

             d.      Plaintiffs and Their Counsel Will Continue to Adequately
                    Represent the Interests of the Class ......................................................... 9

       2.  Rule 23(b) is Also Satisfied. ............................................................................ 10

             a.      Common Questions are at the Center of This Litigation
                    and Clearly Predominate Over any Questions That Affect
                    Only Individual Class Members ............................................................... 10

             b.    Class Litigation is Vastly Superior to any Other Option
                   for the Resolution of the Claims in This Litigation ................................. 15

       3.  In the Alternative, Plaintiffs Request that the Court Certify
          a Class as to Defendant's Liability Only. ......................................................... 17

III.    CONCLUSION ........................................................................................................ 18

i

**Table of Authorities**

Cases

*Abdullah v. U.S. Security Associates, Inc*. 731 F.3d 952 (9th Cir. 2013)...................7

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ...........................10

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S.Ct. 1184 (2013)........10

*Balasanyan v. Nordstrom, Inc.*, 294 F.R.D. 550 (S.D. Cal. 2013)...........................7

*Batties et. al v. Waste Management of Pennsylvania, Inc.,* Case No. 14-7013
(E.D. Pa. Dec. 21, 2015) ...........................13

*Bowerman v. Field Asset Servs.,* No. 13-cv-00057-WHO, 2015 U.S. Dist.
LEXIS 37988 (N.D. Cal. Mar. 24, 2015) ...........................6

*Butler v. Sears, Roebuck and Co.,* 727 F.3d 796, 800 (7th Cir. 2013) ...................17

*Collins v. Olin Corp*., 248 F.R.D. 95 (D. Conn. 2008) ...........................14

*Comcast v. Behrend*, 133 S. Ct. 1426 (2013) ...........................14, 15, 17, 18

*Ellis v. Costco Wholesale*, 657 F.3d 970 (9th Cir. 2011).........................9

*Erica P. John Fund, Inc. v. Halliburton Co.,* 131 S.Ct. 2179 (2011)........................11

*Goreham v. Grain Processing Corporation*, Case No. LACV021232
(Iowa St. Dist. Ct. Oct. 28, 2015) ...........................13, 16, 17

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)..............................8, 9, 10

*Hanon v. Dataproducts Corp.,* 976 F.2d 497 (9th Cir. 1992) ...........................9

*Harris v. Palm Springs Alpine Estates, Inc.* 329 F.2d 909 (9th Cir. 1964) ...............7

*Hill v. City of Warren,* 276 Mich. App. 299 (Mich. Ct. App. 2007) ....................14

*In re Conagra Foods, Inc.,* 90 F. Supp. 3d 919 (C.D. Cal. 2015)...........................12

*In re Wells Fargo Home Mortg. Overtime Pay Litig.,* 571 F.3d 953 (9th Cir. 2009) .............10

*Jones v. Capitol Enters.,* 89 So. 3d 474 (La.App. 4 Cir. 2012) ...........................14

*Jordan v. Cnty. of Los Angeles,* 669 F.2d 1311 (9th Cir. 1982)...............................7

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION**

*Jiminez v. Allstate Insurance Co.,* 765 F.3d 1161 (9th Cir. 2014) ........................................ 15

*Leyva v. Medline Indus.,* 716 F.3d 510 (9th Cir. 2013) ........................................................ 14

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v.
Las Vegas Sands, Inc.,* 244 F.3d 1152 (9th Cir.) .................................................................. 15

*Lockheed Martin Corp. v. Superior Court,* 29 Cal. 4th 1096 (2003) ..................................... 12

*Marr v. WMX Techs., 244* Conn. 676 (Conn. 1998) ............................................................ 17

*Mejdreck v. Lockformer Co.,* 2002 U.S. Dist. LEXIS 14785,
2002 WL 1838141 (N.D. Ill. Aug. 9, 2002) ........................................................................ 14

*Marsu, B.V. v. Walt Disney Co.,* 185 F.3d 932 (9th Cir. 1999) .............................................. 5

*Mazza v. Am. Honda Motor Co.,* 666 F.3d 581 (9th Cir. 2012) ...........................................7, 8

*Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 2015 U.S. Dist.
LEXIS 159477 (C.D. Cal. Nov. 16, 2015) ........................................................................... 6

*Monks v. City of Rancho Palos Verdes,* 167 Cal. App. 4th 263 (2008)................................. 11

*Parsons v. Ryan,* 754 F.3d 657 (9th Cir. 2014) ..................................................................... 9

*Phillips Petroleum Co. v. Shutts,* 472 U.S. 797 (1985) ........................................................ 15

*Ponca Tribe of Indians v. Cont'l Carbon Co.*, No. CIV-05-445-C,
2007 U.S. Dist. LEXIS 577, 2007 WL 28243 (W.D. Okla. Jan. 3, 2007) ........................13, 16

*Pulaski & Middleman, LLC v. Google, Inc.,* 802 F.3d 979 (9th Cir. 2015) ....................... 5, 14

*Roach v. T.L. Cannon Corp.,* 778 F.3d 401 (2d Cir. 2015)................................................... 15

*San Diego Gas & Electric Co. v. Superior Court*, 13 Cal. 4th 893 (1996) ........................... 11

*Santa Fe P'ship v. Arco Prods. Co.,* 46 Cal. App. 4th 967 (1996).......................................... 5

*Spann v. J.C. Penney Corp.,* 307 F.R.D. 508 (C.D. Cal. 2015) ...................................8, 10, 17

*Stanley v. U.S. Steel Co*., 2006 U.S. Dist. LEXIS 16582,
2006 WL 724569 (E.D. Mich. Mar. 17, 2006). ..............................................................12, 13

*Stoll v. Kraft Foods Global, Inc.,)* 2010 U.S. Dist. LEXIS 92930,
2006 WL 724569 (S.D. Ind. Sept. 6, 2010) ........................................................................ 14

iii

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION**

*Tchoboian v. Parking Concepts, Inc.,* No. SACV 09-422,
2009 WL 2169883 (C.D. Cal. Jul. 16, 2009)..........................................................15

*Turner v. Murphy Oil USA, Inc.,* 234 F.R.D. 597 (E.D. La. 2006) .......................... 14

*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.,* 1 Cal. 3d 586 (1970) ........................... 5

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co.,* 593 F.3d 802 (9th Cir. 2010).................................... 6

*Wal-Mart Stores, Inc. v. Dukes, 131* S.Ct. 2541 (2011) ........................................... 7

*Warner v. Waste Mgmt.,* 36 Ohio St. 3d 91 (Ohio 1988)........................................ 14

*Westways World Travel, Inc. v. AMC Corp.,* 218 F.R.D. 223 (C.D. Cal. 2003)...................... 16

*Wolin v. Jaguar Land Rover North Am., LLC,* 617 F.3d 1168 (9th Cir. 2010) ..............8, 10, 15

*Zinser v. Accufix Research Institute, Inc.,* 253 F.3d 1180 (9th Cir. 2001) ............................. 11

Rules

Fed. R. Civ. P. 23 ...................................................................................................*passim*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Plaintiffs respectfully submit the following memorandum in support of their Motion for Class Certification.

## I.   INTRODUCTION AND FACTUAL BACKGROUND

Plaintiffs brought this case on behalf of themselves and a class of their neighbors who have been subjected to horrific odors due to Defendant's failure to adequately mitigate the odors generated in its industrial operations. Defendant owns and operates an animal rendering plant, which processes remnants of animal carcasses into various products that Defendant can sell. Plaintiffs allege that Defendant has failed to properly utilize available processes and technology to control the emission of the odors generated in that process. Plaintiffs allege that the noxious rotting odors from Defendant's facility have frequently been dispersed onto their properties, preventing the full use and enjoyment of their homes.

Plaintiffs originally filed this case in Fresno County Superior Court on May 12, 2014. Defendant removed the action to this Court on July 18, 2014. ([Doc. No. 1].) Plaintiffs filed their First Amended Complaint ("FAC") on August 13, 2014. ([Doc. No. 20].) Defendant moved to dismiss each count of the FAC on August 27, 2014. ([Doc. No. 29].) The Court denied Defendant's motion in its entirety on October 30, 2014. ([Doc. No. 37].) Discovery was bifurcated into merits and class certification phases, and fact and expert discovery for the class certification phase is complete. (See [Doc. No. 37], Pretrial Scheduling Order.) Plaintiffs now move for certification of this case as a class action to provide for the efficient and orderly resolution of their functionally identical claims in a single trial.

This case can and should be tried on behalf of a certified class. As Plaintiffs' Trial Plan (Trial Plan, "Ex. 1.") sets forth, the issues in this case lend themselves extraordinarily well to common proof and class-wide resolution. Common evidence will show that Defendant has created a nuisance, as well as the nature and extent of that nuisance. Defendant is likely to raise various issues that allegedly render class certification inappropriate, but none of those issues are true obstacles to a certified class. Class litigation

1    is the only truly efficient way to bring this case to an orderly resolution.

2    **A.**　　　**Defendant Operates an Animal Rendering Plant That Generates Odors Which**

3    　　　　　**Plaintiffs Allege Are Inadequately Controlled and Therefore Dispersed Into**

4    　　　　　**Plaintiffs' Neighborhoods**

5    　　　It is well known that rendering facilities generate putrid odors that can be dispersed

6    across nearby property if not properly controlled. (See Expert Report of David A. Weeks,

7    "Ex. 2," 2.)  Animal rendering operations include 1) receiving (and if necessary, storing) raw

8    material such as animal carcasses; 2) reducing the size of the material through crushing,

9    grinding, or cutting; 3) treating the raw material with heat; 4) separating oil and fat from the

10   cooked product using centrifuges; and 5) refining and storing the oil, fat and solids that result

11   from the separation process. (*Id.,* 1). Odors from rendering facilities are created by, inter alia,

12   putrefaction, the process of rotting in organic matter such as animal carcasses. (Expert Report

13   of Dr. Timothy Bowser, "Ex. 3," 3.) Putrefaction can be prevented or reduced through proper

14   practices, and those odors that are created can be effectively captured and treated with proper

15   technology. (*Id.*) Byproducts, including wastewater, are generated as a result of rendering

16   processes, and odorous emissions from those byproducts must also be controlled. (*Id.*, 6.)

17   Studies have shown that odors from rendering plants can travel as far as 20 miles from the

18   facility. (*Id.*, 30.)

19   　　　Defendant's facility covers approximately 5.2 acres in the western portion of the City

20   of Fresno. (*Id.*, 1.) It is permitted to process up to 850,000 pounds of dead animal material

21   each day, converting the material into products such as tallow, grease, and lard. (*Id.*)

22   Defendant's facility has been the subject of verified regulatory odor complaints, media

23   reports, and civil rights litigation. (Ex. 2, 1; ABC 30 report "Ex. 4." ("even when there is no

24   smoke to be seen, the smells are often overpowering"; SJVAPCD Complaint Investigation

25   "Ex. 15.") At one point, the City of Fresno sought to enter into a consent agreement with

26   Defendant to address this odor problem. (Draft Consent Agreement, "Ex. 5.") In the draft of

27   that agreement, the City of Fresno referred to Defendant's facility as a "nuisance," noting

28   that it had confirmed odors offsite on multiple occasions. (*Id.,* 1.) However, no final consent

1    agreement was ever entered into.

2        A group of area residents known as "Concerned Citizens of West Fresno" ("CCWF")

3    brought an action against Defendant and the City of Fresno[1] in 2012. (CCWF Action Docket

4    Register, "Ex. 6.") At the time, CCWF alleged that the City had failed to require Defendant

5    to obtain the proper permits, that Defendant had failed to obtain the proper permits, and that

6    Defendant's operations constituted a continuing public and private nuisance. In one of

7    several amendments to its complaint, CCWF abandoned its nuisance claims. Since at least

8    April of 2014, Defendant has engaged in ongoing mediation with CCWF and the City, having

9    repeatedly adjourned a trial date originally set for July 9, 2014. (CCWF April 2015 Joint

10   CMS, "Ex. 7.") A joint filing of the parties to that action indicates that Defendant has

11   continued to engage in mediation directed toward a possible outcome of relocating its facility

12   entirely. (*Id.*) In fact, Defendant has identified at least one specific property which it is

13   considering for a potential plant relocation. (*Id.*) The instant Plaintiffs are supportive of the

14   actions of CCWF, but believe that given Defendant's track record and the lack of apparent

15   progress made in the CCWF case[2], this action may be more likely to provide relief to area

16   residents. And regardless of the outcome of the CCWF action, this is the only case that seeks

17   to provide compensation for the nuisance that Plaintiffs allege Defendant has maintained.

18   **B.    Plaintiffs Allege That Their Basic Right to Use and Enjoy Their Homes Has**

19          **Been Repeatedly Violated by Defendant's Emissions**

20       Plaintiffs are the rendering plant's neighbors, forced to live with the smell of rotting

21   death at their homes. Like Defendant's facility, their properties sit in a largely working class

22   portion of Fresno. Plaintiffs allege and will seek to prove that Defendant's odor emissions

23

24   [1] The City of Fresno had a judgment entered in its favor, but later attempted to intervene a
     plaintiff against Defendant, which motion was denied on February 18, 2014.

25

26   [2] CCWF has "expressed its concern with the continued open ended nature of the mediation
     process and its desire for a clear timeline for the assessment of financing options for
     relocation and determination by Darling as to whether it will commit to pursuing relocation
27   at the site selected." (Ex. 7, 4.) No trial date has been set and the case is next set for a Case
     Management Conference in May, 2016. (January 28, 2016 CCWF Case Management
28   Conference Minute Order, "Ex. 8.")

have been dispersed across the class area, depriving them of the full use and enjoyment of their homes. Plaintiffs seek to certify a class defined as:

> All persons who were owner/occupants and renters of residential property within 1.5 miles of Defendant's rendering plant at any point between May 12, 2011 and the date the Class is certified.

Excluded from the class are the officers, directors and employees of Defendant, the judicial officers presiding over this action and the members of their immediate families and judicial staff, and any juror assigned to this action.

More than 160 area residents have communicated with Plaintiffs' counsel, using similar descriptors to convey the impact that Defendant's facility has had on them.[3] (Resident Data Sheets, "Ex. 9.") The terms these people use to describe the odors that they have been subjected to highlight the incredibly offensive nature of those smells.  For example, Delphina Ruiz describes the odors as "dead cows." (*Id.*, 118.) Virginia Momon notes that "the odor smells like something dead." (*Id.*, 90.) Charles Garibay calls the odors "foul smelling like a dead animal or rotten meat." (*Id.*, 44.)  A deeper review of the Resident Data Sheets will lead the reader to many similar descriptions.  Defendant's neighbors complain that they have been unable to open windows, enjoy their yards, or have company visit. (*Id.*, 5, 9, 57.) At the merits stage, Plaintiffs will have no shortage of testimony to present as to the foul nature of Defendant's odors and the impacts those odors have on ordinary people.

**C.      Plaintiffs Propose to Try This Case on Behalf of a Class in Three Phases**

Plaintiffs have attached a trial plan that more fully sets forth their proposal for establishing their claims. (Ex. 1.) Therein, Plaintiffs propose to try this case in three stages. In the first stage, Plaintiffs will seek to prove that Defendant created a neighborhood nuisance, and was negligent in doing so. (*Id.,* 3-7.) This stage will revolve around Defendant's conduct and its general impact on the area surrounding Defendant's facility. (*Id.*) Relevant evidence at this stage will include Defendant's documents and operational

---

[3] Plaintiffs have attached all responses to the Resident Data Sheet, including five (5) responses that do not indicate the presence of odor.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

records, expert testimony to include the standard of care in Defendant's industry and how Defendant's operations compared to that standard, and the testimony of area residents. (*Id.*)

In the second stage, Plaintiffs will establish the geographic extent of the nuisance that Defendant has created, proving that the entire class is subjected to the nuisance demonstrated in the first stage. (*Id.,* 7.) The evidence in this stage will include expert testimony such as that of Plaintiffs' air dispersion modeler, as well as the testimony of residents in various locations throughout the class area. (*Id.*)

In the third stage, Plaintiffs will establish the damages to which the putative class is entitled. (*Id.,* 7-8.) "In calculating damages… California law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation. The fact that the amount of damage may not be susceptible of exact proof or may be uncertain, contingent or difficult of ascertainment does not bar recovery." *Pulaski & Middleman, LLC v. Google, Inc.,* 802 F.3d 979 (9th Cir. 2015) (citation and internal quotation marks omitted). "It is within the sound discretion of the trier of fact to select the formula most appropriate to compensate the injured party." *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 939 (9th Cir. 1999) (quoting *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 599 (1970)). Where a nuisance is temporary in nature and there are no costs of remediation to the Plaintiffs' property, the proper measure of damages is loss of use and enjoyment.[4] See *Santa Fe P'ship v. Arco Prods. Co.*, 46 Cal. App. 4th 967, 980 (1996).

Plaintiffs will ask the jury to determine the threshold at which Defendant's odors become a nuisance. (Ex. 1, 6.) Plaintiffs will then ask the jury to assign a reasonable hourly value for the exposure to nuisance odors. (*Id.,* 8.) Plaintiffs will present common evidence in the form of air dispersion modeling as to the number of hours that the various properties in the class area were exposed to nuisance level odors. (*Id.*) The hourly rate as determined by the trier of fact can be applied to the hours of exposure for the various properties as a

---

[4] Where the activity causing the injury can be abated, a nuisance is temporary. *Santa Fe P'ship v. Arco Prods. Co.*, 46 Cal. App. 4th 967, 980 (1996).

1   measure of each Class Member's damages.

2       Alternatively, individual proceedings to determine damages can be held after liability

3   is established. See *Bowerman v. Field Asset Servs.*, No. 13-cv-00057-WHO, 2015 U.S. Dist.

4   LEXIS 37988, at *40-41 (N.D. Cal. Mar. 24, 2015) ("Under plaintiffs' proposed trial

5   plan, damages will be considered only once liability is established, at which point FAS will

6   have the opportunity to present individual defenses where appropriate. This is precisely the

7   sort of trial plan that has been approved on numerous occasions in this circuit and elsewhere,

8   both before *Dukes* and after."); *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.,* 2015 U.S.

9   Dist. LEXIS 159477, at *106-07 (C.D. Cal. Nov. 16, 2015) (Westlaw citation not available)

10  ("As to any individualized issues of damages, the court could adjudicate liability and conduct

11  a second phase of the trial, or appoint a special master to assess damages.")

12      As described in Plaintiffs' trial plan, Plaintiffs' proposal will allow for the

13  presentation of evidence sufficient to establish each element of each of the claims of the

14  class. The overwhelming majority of this evidence will be common to all Class Members. At

15  the end of trial (unless the Court elects to utilize a special master for damage

16  determinations), liability and damages will be decided as to every member of the Class. This

17  manageable, orderly, and final determination of the claims of all Class Members satisfies the

18  prerequisites for certification and shows that class certification is the best available option.

19  ## II.   ARGUMENT

20  **A.   This Case Should be Certified as a Class Action Under Fed. R. Civ. P. 23**

21      **1.   The Four Requirements of Rule 23(a) are Satisifed.**

22      "The four requirements of Rule 23(a) are commonly referred to as 'numerosity,'

23  'commonality,' 'typicality,' and 'adequacy of representation' (or just 'adequacy'),

24  respectively." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv.*

25  *Workers Int'l Union, AFL-CIO v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010).  In

26  view of the way in which Plaintiffs will prove their claims, each of these prerequisites is

27  plainly satisfied.

28      **a.   The Proposed Class is so Numerous That Joinder of all Members**

**is Clearly Impracticable.**

For class certification to be proper, a putative class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[I]mpracticability does not mean impossibility, but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.* 329 F.2d 909, 913-14 (9th Cir. 1964). While there is no fixed rule, a class with at least 40 members is generally sufficiently large. *Jordan v. Cnty. of Los Angeles*, 669 F.2d 1311,1319 (9th Cir. 1982), vacated on other grounds, 459 U.S. 810 (1982). "In determining whether numerosity is satisfied, the court may consider reasonable inferences drawn from the facts before it." *Balasanyan v. Nordstrom, Inc.*, 294 F.R.D. 550, 558 (S.D. Cal. 2013).

The numerosity of the proposed class cannot be seriously disputed. The proposed class area includes approximately 4,745 residential properties. (Declaration of Nicholas A. Coulson "Ex. 10,"¶ 11, Census Data, "Ex. 16".) Joinder of the several thousand owner/occupants or renters of these properties would entail a thousand plaintiffs or more. This is clearly impracticable.

> **b.     There are Numerous Questions of Fact and Law Common to all Members of the Class.**

The commonality prerequisite requires Plaintiffs to establish that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is shown where the claims of named plaintiffs and absent class members "depend upon a common contention . . . [whose] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011). "This does not, however, mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single significant question of law or fact." *Abdullah v. U.S. Security Associates, Inc*. 731 F.3d 952, 957 (9th Cir. 2013), cert. denied, 135 S. Ct. 53, 190 L. Ed. 2d 30 (2014)(emphasis and internal quotation marks omitted); see *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) (characterizing commonality as a "limited burden[,]" stating that it "only requires a single significant question of law or fact[,]"

and concluding that it remains a distinct inquiry from the predominance issues raised under Rule23(b)(3)). Proof of commonality under Rule 23(a) is less rigorous than the related predominance standard under Rule 23(b)(3). See *Mazza*, 666 F.3d at 589; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20 (9th Cir. 1998). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Spann v. J.C. Penney Corp.,* 307 F.R.D. 508, 517-18 (C.D. Cal. 2015) (quoting *Hanlon*, 150 F.3d at 1019).

The myriad common issues of fact and law form the very core of this litigation, particularly Defendant's conduct. Plaintiffs will present common evidence regarding Defendant's operation, the odors it generates, what it does to mitigate and control those odors, and what it should have done under the industry standard. Then Plaintiffs will offer a single set of evidence to establish where Defendant's odors are transported to, as well as their frequency, intensity, and duration. None of this evidence will vary by Plaintiff. Further, whether the benefit of Defendant's business outweighs the harm its odors have caused (in view of the fact that it could conduct that business without emitting those odors) is a question that is common to all. And the objective determination of how a reasonable person would view Defendant's odors is an issue that will be answered class-wide. Simply put, each important aspect of this case entails common questions that will be resolved by applying common evidence to common legal standards.

> **c.     The Claims of the Named Plaintiffs Are Typical of the Claims of the Class.**

Typicality requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P.23(a)(3). The purpose of this requirement "is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover North Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (internal quotation marks omitted). Typicality does not require the claims to be substantially identical. *Hanlon*, 150 F.3d at 1020.

Rather, "claims are 'typical' if they are reasonably co-extensive with those of absent

class members …." *Id.* "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Plaintiffs' claims are entirely typical of the claims of their neighbors. Any differences that Defendant will seek to raise amongst Plaintiffs and their neighbors are superficial and/or irrelevant to the typicality determination. Plaintiffs and the putative class allege the same type of injury from the same course of conduct by the same Defendant. The named Plaintiffs are pursuing the same claims possessed by the absent class members, on the same legal theories. Under Rule 23 (a)(3), nothing more is required and the typicality requirement is satisfied.

### d.      Plaintiffs and Their Counsel Will Continue to Adequately Represent the Interests of the Class.

Rule 23(a)(4) permits certification of a class action if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Ninth Circuit uses a two-prong test to determine whether representation meets this standard: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon*, 150 F.3d at 1020).

The named Plaintiffs have vigorously advanced the claims of the class, and will continue to do so. Before bringing this action, Plaintiffs retained counsel with substantial experience in litigating similar cases. (Ex. 10; Declaration of Ingrid M. Evans "Ex. 11"; Declaration of Laura L. Sheets, "Ex. 12.") Plaintiffs have complied with Defendant's discovery requests and have each provided deposition testimony in addition to assisting Counsel with their investigation. (Ex. 10, ¶ 10.) In investigating, filing, and litigating this case to present, Plaintiffs' Counsel has vigorously pursued the claims of the class and will

1 continue to do so. (Ex. 10; Ex. 11; Ex. 12.) Plaintiffs clearly satisfy Rule 23(a)(4).

2       **2.**       **Rule 23(b) is Also Satisfied.**

3      "Certification under Rule 23(b)(3) is proper 'whenever the actual interests of the

4 parties can be served best by settling their differences in a single action.'" *Spann*, 307 F.R.D.

5 at 519 (quoting *Hanlon*, 150 F.3d at 1022). Rule 23(b)(3) requires two different inquiries,

6 specifically a determination as to whether: (1) "questions of law or fact common to class

7 members predominate over any questions affecting only individual members[;]" and (2) "a

8 class action is superior to other available methods for fairly and efficiently adjudicating the

9 controversy." *Id.*, quoting Fed. R. Civ. P. 23(b)(3). Here, common questions overwhelmingly

10 predominate over individual ones, and class litigation is the only reasonable option for the

11 fair and efficient adjudication of this entire controversy.

12         **a.**      **Common Questions are at the Center of This Litigation and**

13                **Clearly Predominate Over any Questions That Affect Only Individual**

14                **Members.**

15      "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are

16 sufficiently cohesive to warrant adjudication by representation."*Amchem Prods., Inc. v.*

17 *Windsor*, 521 U.S. 591, 623 (1997). "Though there is substantial overlap between [the Rule

18 23(a)(2) commonality test and the Rule 23(b)(3) predominance test], the Rule 23(b)(3) test is

19 far more demanding[.]" *Wolin*, 617 F.3d at 1172 (internal quotation marks omitted). The

20 "focus is on the relationship between the common and individual issues*." In re Wells Fargo*

21 *Home Mortg. Overtime Pay Litig*., 571 F.3d 953, 957 (9th Cir. 2009) (internal quotation

22 marks omitted).

23      Rule 23(b)(3) does not require plaintiffs seeking class certification to prove that each

24 element of their claim is susceptible to class-wide proof. *See Amgen Inc. v. Connecticut Ret.*

25 *Plans & Trust Funds*, 133 S.Ct. 1184, 1196 (2013). Plaintiffs need only show that "common

26 questions 'predominate over any questions affecting only individual [class] members.'" *Id*.

27 (quoting Fed. Rule Civ. Proc. 23(b)(3)).  "[I]f the main issues in a case require the separate

28 adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action

would be inappropriate." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (internal quotation marks omitted). "Considering whether questions of law or fact common to class members predominate begins . . . with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S.Ct. 2179, 2184 (2011) (internal quotation marks omitted).

Defendant is likely to argue that subjective determinations inherent in nuisance cases destroy the predominance of common issues. However, this ignores Plaintiffs' proffered method of common proof as well as California's objective nuisance standard. California's law of nuisance consists of two primary requirements; that the invasion be 1) substantial and 2) unreasonable. *San Diego Gas & Electric Co. v. Superior Court*, 13 Cal. 4th 893 (1996).  Both of these requirements are judged *objectively*, without regard to the particular circumstances of an individual Plaintiff. (*Id.*) With regard to the "substantial" interference requirement, "the degree of harm is to be judged by an objective standard, i.e., what effect would the invasion have on persons of normal health and sensibilities living in the same community? … 'If normal persons in that locality would not be substantially annoyed or disturbed by the situation, then the invasion is not a significant one, even though the idiosyncrasies of the particular plaintiff may make it unendurable to him.' [citation]." *Monks v. City of Rancho Palos Verdes*, 167 Cal. App. 4th 263, 303 (2008) (internal citation omitted). With regard to the unreasonableness inquiry, the primary test is "whether the gravity of the harm outweighs the social utility of the defendant's conduct . Again the standard is objective: the question is not whether the particular plaintiff found the invasion unreasonable, but 'whether reasonable persons generally, looking at the whole situation impartially and objectively, would consider it unreasonable.' " *Id.* (citation omitted).

Plaintiffs need not make separate showings that each and every class member has experienced odors that subjectively constituted a nuisance to that individual. A classwide determination of objective nuisance can and will be made. Objective determinations are especially well suited for class treatment. (See, e.g., *In re Conagra Foods, Inc.*, 90 F. Supp. 3d 919, 983 (C.D. Cal. 2015)).  Whatever idiosyncrasies may exist amongst putative class

members' senses or sensibilities are irrelevant. The jury will be able to apply uniform standards to a single set of common evidence to determine whether the odor impacts experienced across the class area constitute a substantial and unreasonable interference.

Defendant may assert that the elements of negligence, too, require individualized proof. In California, it has been noted that in an environmental class action, "[w]hether defendants... owed a duty of care to the class members, i.e., to the persons who lived for the specified period within the specified geographical area, is a question of law for the court. Defendants proffer no reason why a court would need to engage in individualized analysis in order to answer that question." *Lockheed Martin Corp. v. Superior Court*, 29 Cal. 4th 1096, 1106 (2003). Similarly, whether Defendant owed and/or breached a duty by failing to properly control its emissions is a common question to the class. Causation and injury, too, will be established with common proof, including air dispersion modeling.

Plaintiffs' trial plan demonstrates that the issues common the class as a whole will predominate over any limited issues that may vary amongst class members. While Defendant will seek to elevate these individual issues, the litigation will be conducted such that these individual issues are not only manageable, but minimal. The key here is common proof. The evidence that Plaintiffs present in proving their claims will be useful for resolving the claims of the class as a whole, not for specific individual class members.

"Common issues predominate in air pollution cases when the paramount issue concerns whether a plant's emissions are substantially interfering with the local residents' use and enjoyment of their real and personal property." *Stanley v. U.S. Steel Co*., 2006 U.S. Dist. LEXIS 16582, 21, 2006 WL 724569 (E.D. Mich. Mar. 17, 2006). This is particularly true where, as here, common evidence will be offered to show the frequency, intensity, and dispersion pattern of Defendants' emissions. "Deciding liability will consume the vast majority of the time, evidence and witness presentation. Also, air testing and pollution data, pollution experts ... witnesses and documents will be utilized for each of the putative class members, thus common issues predominate over any individual issues that exist." *Stanley*, 2006 U.S. Dist. LEXIS 16582 at 23.

Where common evidence is offered to prove the claims of the class in similar cases, Courts routinely find that common issues predominate and grant certification. For example:

> although the degrees of impact may vary—the common issues…respecting Defendant's conduct are subject to generalized proof. Accordingly, they predominate over issues regarding the damages suffered by each prospective Class Member.

(Dec. 21, 2015 Order in *Batties et. al v. Waste Management of Pennsylvania, Inc.,* Case No. 14-7013 (E.D. Pa.) "Ex. 14," 7.) In another case, the Court held that:

> questions regarding the production of [a contaminant], how it may be discharged into the environment, where it may go after such discharge, and what effect it has on property, among others, are clearly common to the claims of all Plaintiffs. Further, the legal theories on which the Plaintiffs rely are dependent on the same law. Thus, common questions of law and fact predominate. To the extent it becomes necessary to address damages issues on an individual basis, that issue may be resolved at a later date either through decertification of the class, the creation of subclasses, or other means.

*Ponca Tribe of Indians v. Cont'l Carbon Co.*, No. CIV-05-445-C, 2007 U.S. Dist. LEXIS 577, at *24-25, 2007 WL 28243 (W.D. Okla. Jan. 3, 2007).

A recent case from Iowa involving a similar trial plan is instructive. Like California, the State of Iowa employs an objective standard for nuisance. (See Ex. 13, Oct. 28, 2015 Class Certification Order in *Goreham v. Grain Processing Corporation*, Case No. LACV021232 (Iowa St. Dist. Ct.) "Ex. 13.")

> [B]ecause Iowa law measures the existence of nuisance-level harm objectively, a nuisance claim brought under Iowa law is not inherently individual.  Indeed, Iowa's objective standard renders many of Defendant's Due Process arguments—idiosyncratic sensitivities, physical infirmities, life style choices, preferences for use and enjoyment, housekeeping habits—immaterial to proving nuisance.  Further, Iowa's objective-nuisance-standard supports Plaintiffs' plan for presenting the jury with lay testimony from witnesses—whom the jury can find are "normal persons living in the community"—to prove the class-wide impact of the alleged nuisance throughout each subclass area.
>
> ...
>
> While variations in the individual damage claims are likely to occur and other sources of emissions may pose unusual difficulties, common questions of law or fact regarding Defendant's liability predominate over questions affecting only individual class members such that the subclasses should be permitted for the fair and efficient adjudication of this controversy.

1    (*Id.* at 36, 42.)

2         Similar cases in which certification has been granted and/or upheld include *Mejdreck*

3    *v. Lockformer Co*., 2002 U.S. Dist. LEXIS 14785, 1, 2002 WL 1838141 (N.D. Ill. Aug. 9,

4    2002) (environmental claims including nuisance and negligence certified); *Stoll v. Kraft*

5    *Foods Global, Inc.*, 2010 U.S. Dist. LEXIS 92930, 2006 WL 724569 (S.D. Ind. Sept. 6,

6    2010) (class of residents certified to pursue environmental claims); *Collins v. Olin Corp*., 248

7    F.R.D. 95 (D. Conn. 2008) (class of landowners seeking damages loss of use and enjoyment

8    granted certification for claims that waste at a landfill contaminated their properties); *Turner*

9    *v. Murphy Oil USA*, Inc., 234 F.R.D. 597 (E.D. La. 2006) (nuisance and negligence claims

10   certified in oil spill); *Warner v. Waste Mgmt*., 36 Ohio St. 3d 91 (Ohio 1988) (affirming in

11   relevant part certification of class pursuing negligence and nuisance claims against operators

12   of a landfill); *Jones v. Capitol Enters*., 89 So. 3d 474 (La.App. 4 Cir. 2012) (nuisance claim

13   for effects of water tower sandblasting project certified); and *Hill v. City of Warren,* 276

14   Mich. App. 299 (Mich. Ct. App. 2007) (class certification of nuisance and negligence claims

15   upheld).

16        Defendant may argue that differences in individual damages defeat class certification,

17   or that Plaintiffs must present a specific damages model prior to having a class certified.

18   These arguments have been made following the United States Supreme Court's opinion in

19   *Comcast v. Behrend*, 133 S. Ct. 1426 (2013), but both of them have been laid to rest. The

20   Ninth Circuit recognizes that "the presence of individualized damages cannot, by itself,

21   defeat class certification under Rule 23(b)(3)." *Leyva v. Medline Indus.*, 716 F.3d 510, 514

22   (9th Cir. 2013). Further, the presentation of a classwide damages model is not a prerequisite

23   for certification of a class. The Ninth Circuit has determined that the court in *Comcast* "did

24   not hold that proponents of class certification must rely upon a classwide damages model to

25   demonstrate predominance." *Pulaski,* 802 F.3d at 987; see also *Jiminez v. Allstate Insurance*

26   *Co.,* 765 F.3d 1161, 1167 (9th Cir. 2014) (citing cases from the Sixth, Seventh, and Fifth

27   Circuits in agreement with this position); *Roach v. T.L. Cannon Corp.,* 778 F.3d 401, 407-08

28   (2d Cir. 2015)(citing cases from the First, Tenth, Fifth, Seventh, Sixth, and Ninth Circuits to

support the proposition that *Comcast* did not require a classwide basis for damages calculations).

    **b. Class Litigation is Vastly Superior to any Other Option for the Resolution of the Claims in This Litigation.**

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy. Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin*, 617 F.3d at 1175-76 (citation and internal quotation marks omitted). "Class actions may permit the plaintiffs to pool claims which would be uneconomical to bring individually." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir.), cert. denied, 122 S. Ct. 395 (2001) (further finding that "[i]f plaintiffs cannot proceed as a class, some — perhaps most — will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover") (internal quotation marks and alteration omitted).

Here, each Class member's individual claim is too small to justify the potential litigation costs that would be incurred by prosecuting these claims individually. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985); *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund,* 244 F.3d at 1163; *Wolin*, 617 F.3d at 1175-76. Although the damages that Defendant has inflicted upon the Class are significant, the cost of individually litigating each case against Defendants would easily exceed the value of any relief that could be obtained by any one Class Member. This factor alone warrants a finding that a class action is a superior method of adjudication. *See Tchoboian v. Parking Concepts, Inc*., No. SACV 09-422, 2009 WL 2169883, at *7 (C.D. Cal. Jul. 16, 2009). And because the claims of each Class Member in this case are virtually identical, no one member of the Class would have a materially greater interest in controlling the litigation. *See Westways World Travel, Inc. v. AMC Corp.,* 218 F.R.D. 223, 240 (C.D. Cal. 2003).

A contrast of Plaintiffs' proposal for trying this case on behalf of a class against the

alternative(s) demonstrates that class litigation is a vastly superior option. The denial of class certification would likely mean that many proposed class members would seek to bring or join actions in their individual capacities[5], while many others would never have a chance at redress for their injuries. Individual actions (or actions otherwise in an individual capacity) would unnecessarily waste the resources of the parties and the judicial system, with needless repetitive discovery and motion practice. Further, the individual actions would have preclusive effect against only the individuals who brought them. This could create the possibility of a stream of actions in search of favorable findings which could then be used against Defendant in subsequent actions. And if any class member obtained a judgment against Defendant (or even an individual settlement), one can be sure that more of Defendants' neighbors would make their way into court. Simply put, individual litigation would be unnecessary, inefficient, and wasteful, and may result in inconsistent results and long term uncertainty.

Courts have routinely recognized the wastefulness and inefficiency of individually trying claims in neighborhood environmental cases. In such a case, "having hundreds of property owners file the same action against the same defendants for the same types of injury is a clear waste of judicial resources." *Ponca Tribe of Indians,* 2007 U.S. Dist. LEXIS 577 at 25, 2007 WL 28243. Among other reasons, "[g]iven the complexities of the liability issue and the expenses of this litigation, the claims of individual class members are insufficient in the amounts or interests involved to afford significant relief" without certification. (Ex. 13, 42.) The *Goreham* Court found that "class action will establish or extinguish Defendant's liability in a single proceeding for thousands of [area] residents. This will avoid unacceptable costs and repetition for both parties.  The Court concludes class action offers the most appropriate means of adjudicating this controversy and 'should be permitted for the fair and efficient adjudication' of Defendant's liability." (Ex. 13, 42-43). Or, as stated by the District

---

[5] This is evidenced by the fact that over 160 putative Class Members have already contacted Plaintiffs' Counsel. In Counsel's experience, this number can be expected to grow substantially in the event that certification is not granted.

of Connecticut,

> [t]he issues of liability and causation, however, require almost identical evidence of the pollution emanating from the [facility] and its causal connection, if any, to the plaintiffs' alleged damages. This class action, considering those issues, would avoid duplication of judicial effort and prevent separate actions from reaching inconsistent results with similar, if not identical, facts,' despite the fact that individual hearings as to damages might be required

*Marr v. WMX Techs.*, 244 Conn. 676, 683 (Conn. 1998) (citation omitted).

Plaintiffs' proposal provides efficiency and a uniformity of result for the parties and the Court. It would prevent inconsistent and varying adjudications and grant certainty and finality to the eventual outcome, whatever it may be. And it would ensure that all Class Members have the opportunity for relief. Allowing a one-time resolution of the claims at issue on behalf of all of those who choose not to opt out is the fairest, most efficient way to proceed by far. As a result, class litigation is clearly the superior option.

### 3. In the Alternative, Plaintiffs Request that the Court Certify a Class as to Defendant's Liability Only.

Alternatively, Plaintiffs request that the Court certify a class as to liability only. "A class may be certified for liability purposes only, leaving individual damages calculations to subsequent proceedings." *Comcast*, 133 S.Ct. at 1437. "A class action under Rule 23(c)(4) may be 'limited to determining liability on a class-wide basis, with separate hearings to determine — if liability is established — the damages of individual class members, or homogeneous groups of class members[.]'" *Spann,* 307 F.R.D. at 532 (quoting *Butler v. Sears, Roebuck and Co.,* 727 F.3d 796, 800 (7th Cir. 2013), cert. denied, 134 S. Ct. 1277 (2014)). Therefore "it is clear that the court can, in the alternative, bifurcate under Rule 23(c)(4) and a certify a liability-only class, eliminating the need to address at this time any issues relating to restitution or damages." *Id.* at 533. Some Defendants in class actions have contested the continued viability of such classes. This position is entirely without merit.

> [The] argument that Comcast may have altered the availability of bifurcation…is unavailing. Comcast found that testimony proffered to show

that damages could be demonstrated at trial by a test common to all class members could not actually do so because the damages calculation method was not tied to the liability case. The Court did not hold that damages must be shown through classwide evidence for common liability issues to predominate. The case, therefore, has no effect on the applicability of bifurcation: a case may be bifurcated with common issues of liability tried before damages and damages tried using common evidence, if applicable, or individualized evidence, as bifurcating courts often do.

*Id.* at 532 (internal citations and quotation marks omitted). If for any reason the Court should find that common issues do not predominate the case as a whole, the Court should still certify the Class for liability purposes.

## III.    <u>CONCLUSION</u>

Defendant will ask this Court to require a form of litigation that deprives many Class Members of their day in Court while foisting massive inefficiencies on the parties and the judicial system. In view of the fact that the overwhelming majority of the issues to be decided in trying this case will be applicable to all Class Members, Plaintiffs respectfully request that the Court certify the proposed Class to allow the litigation to proceed with fairness and efficiency.

Dated: February 2, 2016                    Respectfully submitted,


                                           LIDDLE & DUBIN, P.C.
                                           By:  s/ Nicholas A. Coulson_____
                                           Laura L. Sheets (*Pro Hac Vice*)
                                           Nicholas A. Coulson (*Pro Hac Vice*)
                                           975 E. Jefferson Avenue
                                           Detroit, Michigan 48207
                                           Phone: (313) 392-0015
                                           Fax: (313) 392-0025
                                           lsheets@mldclassaction.com
                                           ncoulson@mldclassaction.com

                                           EVANS LAW FIRM, INC.
                                           Ingrid M. Evans (CA Bar No. 179094)
                                           3053 Fillmore Street #236
                                           San Francisco, California 94123
                                           Phone: (415) 441-8669
                                           Fax: (888) 891-4906

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

*Attorneys for Plaintiffs*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 2, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice list.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 2, 2016

By: _____/s/Nicholas A. Coulson_____