1   MCCORMICK, BARSTOW, SHEPPARD,
    WAYTE & CARRUTH LLP
2   Christopher S. Hall (CA Bar No. 203901)
    7647 N. Fresno Street
3   Fresno, California 93722-8912
    Phone: (559) 433-1300
4   Fax: (559) 433-2300
    christopher.hall@mccormickbarstow.com
5

6   KEATING MUETHING & KLEKAMP PLL
    Joseph M. Callow, Jr. (*admitted pro hac vice*)
7   Thomas F. Hankinson (*admitted pro hac vice*)
    Jacob D. Rhode (*admitted pro hac vice*)
8   One East Fourth Street, Suite 1400
    Cincinnati, Ohio 45202
9   Phone: (513) 579-6400
    Fax: (513) 579-6457
10  jcallow@kmklaw.com
    thankinson@kmklaw.com
11  jrhode@kmklaw.com

12  Attorneys for Defendant
    Darling Ingredients Inc. (formerly known as Darling
13  International Inc.)

14

**UNITED STATES DISTRICT COURT**

15

**EASTERN DISTRICT OF CALIFORNIA**

16

**SACRAMENTO DIVISION**

17

18  LINDA BROOKS, Individually and on            )   No. 1:14−CV−01128
    behalf of all others similarly situated, et al.   )
19                                                )   **DEFENDANT DARLING INGREDIENTS**
                              Plaintiffs,         )   **INC.'S MEMORANDUM IN OPPOSITION**
20                                                )   **TO MOTION FOR CLASS**
                                                  )   **CERTIFICATION**
21           -v-                                  )
                                                  )
22                                                )
    DARLING INGREDIENTS INC., F/K/A               )
23  DARLING INTERNATIONAL, INC.                   )
                                                  )
24                            Defendant.          )

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................... 1

II.   RELEVANT FACTUAL BACKGROUND ........................................................ 1

III.  ARGUMENT .............................................................................................. 2

     A.    The Court Should Deny Plaintiffs' Motion Because Plaintiffs Fail To Offer Any Evidence to Support Their Motion and Request for Certification. ...................... 5

     B.    Plaintiffs' Class Definition is Overly Broad and Neither Precise Nor Ascertainable .......................................................................................... 7

     C.    The Requirements of Rule 23(a) Are Not Satisfied. ...................................... 10

          1.    Plaintiffs Fail to Satisfy The Commonality Requirement. ............................ 10

          2.    Plaintiffs Fail to Satisfy The Typicality Requirement. ................................. 11

          3.    Plaintiffs Fail To Satisfy The Adequacy Requirement. ................................ 12

     D.    The Requirements of Rule 23(b)(3) Are Not Satisfied. .................................. 13

          1.    Plaintiffs Fail To Satisfy The Predominance Requirement. .......................... 13

               a.    Individualized Proof Is Needed To Determine Whether The Odor Emanates From Darling Or A Third-Party Source. ................... 14

               b.    Individualized Proof Is Needed To Determine Whether One Or More Practices – Of Darling Or A Third Party – Caused The Odor. .................................................................................. 14

               c.    Proving Liability For Nuisance And Negligence Will Require Individualized Proof. ................................................................. 16

               d.    Darling's Defenses Based On The Passage Of Time Will Require Individualized Proof. ................................................................. 18

               e.    Proving The Nature And Extent Of Alleged Harm Will Require Individualized Proof. ................................................................. 19

               f.    Plaintiffs' Admitted Potential Need For "Subclasses" Requires Yet More Individualized Proof. ...................................................... 19

          2.    Plaintiffs Fail To Satisfy The Superiority Requirement. ............................... 20

IV.  CONCLUSION ........................................................................................... 20

DEFENDANT DARLING INGREDIENTS INC.'S
MEMORANDUM IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

# **<u>TABLE OF AUTHORITIES</u>**

## **Cases**

*Arredondo v. Delano Farms Co.*, 301 F.R.D. 493 (E.D. Cal. 2014) .................................................. 7

*Brockman v. Barton Brands, Ltd.*, No. 3:06-CV-332-H, 2007 U.S. Dist. LEXIS 86732 (W.D. Ky. Nov. 20, 2007) ......................................................................................... 3, 7, 8, 9, 11, 14, 15, 16

*Cannon v. BP Prods. N. Am.*, Dist. No. 3:10-CV-00622, 2013 U.S. Dist. LEXIS 142934 (S.D. Tex. Sept. 30, 2013) ...............................................................................................................................3

*City of San Jose v. Superior Court*, 525 P.2d 701 (Cal. 1974) ........................................................ 18

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) .......................................................................... 3

*Conn. Ret. Plans & Tr. Funds v. Amgen Inc.*, 660 F.3d 1170 (9th Cir. 2011) .................................. 5

*Dep't of Fish & Game v. Superior Court*, 197 Cal. App. 4th 1323 (2011) ............................ 4, 17, 18

*Frieman v. San Rafael Rock Quarry, Inc.*, 116 Cal. App. 4th 29 (2004) ......................................4, 18

*Ginardi v. Frontier Gas Servs., LLC*, Dist. No. 4:11-cv-00420, 2012 U.S. Dist. LEXIS 54845 (E.D. Ark. Apr. 19, 2012)............................................................................................................................3

*Gooden v. Suntrust Mortg., Inc.*, No. 2:11-cv-02595-JAM-DAD, 2013 U.S. Dist. LEXIS 173511 (E.D. Cal. Dec. 11, 2013) ............................................................................................................... 7

*Labou v. Cellco P'ship*, No. 2:13-cv-00844-MCE-EFB, 2014 U.S. Dist. LEXIS 26974 (E.D. Cal. Feb. 28, 2014) ............................................................................................... 5, 11, 12, 13

*Mangini v. Aerojet-Gen. Corp.*, 12 Cal. 4th 1087 (1996) ......................................................... 18, 19

*Martinez v. Welk Group, Inc.*, No. 09cv2883 AJB, 2012 U.S. Dist. LEXIS 98433 (S.D. Cal. July 13, 2012) ...............................................................................................................................3, 14

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ....................................................... 9

*McKinnon v. Dollar Thrifty Auto. Group, Inc.*, No. CV 12-cv-04457-SC, 2015 U.S. Dist. LEXIS 97815 (N.D. Cal. July 27, 2015) ............................................................................................. 7, 10

*Moore v. Apple Inc.*, 309 F.R.D. 532 (N.D. Cal. 2015) ................................................................... 9

*Ng v. Republic Servs.*, Super. Ct. Santa Clara No. 1-12-cv-228591, 2015 Cal. Super. LEXIS 283 (Cal. Super. Ct. Jan. 28, 2015)..................................................................................4, 8, 11, 18

*Nolan v. Exxon Mobil Corp.*, Dist. No. 13-439, 2015 U.S. Dist. LEXIS 62619, (M.D. La. May 13, 2015) ...............................................................................................................................3

*O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311 (C.D. Cal. 1998) ............................................... 8

*O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404 (C.D. Cal. 2000) .............................................. 3

DEFENDANT DARLING INGREDIENTS INC.'S
MEMORANDUM IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) ............................................................... 3

*Powell v. Tosh*, No. 5:09CV00121, 2013 U.S. Dist. LEXIS 120448 (W.D. Ky. Aug. 2, 2013) ... 3, 11

*Raven H. v. Gamette*, 157 Cal. App. 4th 1017 (2007) ...................................................... 17

*Smith v. ConocoPhillips Line Co.*, 801 F.3d 921, 927 (8th Cir. 2015) ..................................3

*Simpson v. Cal. Pizza Kitchen, Inc.*, No. 13-cv-164 JLS (JMA), 2013 U.S. Dist. LEXIS 153846 (S.D. Cal. Oct. 1, 2013) ........................................................................................ 17

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ........................................ 2, 3, 10

*Zinser v. Accufix Research Inst.*, 253 F.3d 1180 (9th Cir. 2001) ....................................... 13

**Statutes**

Federal Rule of Civil Procedure 23 ........................................................................ *Passim*

DEFENDANT DARLING INGREDIENTS INC.'S
MEMORANDUM IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

# I.  **INTRODUCTION**

Plaintiffs ask this Court to certify a class on a leap of faith. Plaintiffs have not presented any admissible evidence to support their motion, and Plaintiffs' experts only opine on what they "could" do or "would" do – but admittedly have not done. Complaint allegations and lawyer argument are not evidence. Given the rigorous analysis required for class certification following *Dukes* and *Comcast*, Plaintiffs' motion for class certification ("Motion") is woefully inadequate. This Court should deny Plaintiffs' Motion at its earliest opportunity.

# II.  **RELEVANT FACTUAL BACKGROUND**

Defendant Darling Ingredients Inc. ("Darling") has operated a rendering facility at 795 W. Belgravia Ave. in Fresno, California (the "Plant") for nearly 30 years. A rendering facility has existed at that location, operated by prior owners, for over 60 years. The Plant operates pursuant to an Odor Control Plan and under a Permit issued by the San Joaquin Valley Air Pollution Control District (the "District"). In 2012, the District conducted a review of Darling's compliance history and noted: **"[w]e are not aware of any rendering facility that has more comprehensive and effective emissions controls."** (*See* Warner Letter, Ex. 1, at DII000042 (emphasis added).)

Darling's Plant operates in the middle of an industrial area. It is surrounded by many industrial facilities, including Foster Farms and Cargill; several large farms and other agricultural businesses; and multiple vacant and abandoned properties.

The three remaining plaintiffs/proposed class representatives are long time residents of Fresno. Mr. and Mrs. Conroe have resided at their Fresno house since 1981 but did not file a complaint until 2014. (Mr. Conroe Depo., Ex. 2, at 14:3-15:4.) Ms. Tapscott-Munson grew up in Fresno her whole life and recently purchased her current residence in 2008 – so she admittedly moved closer to the Darling Plant after complaining about odors at various times during her childhood and adult life. (Ms. Tapscott-Munson, Dep., Ex. 3, at 21:23-22:10; 23:8-18; 33:11-37:3.)

As explained *infra*, Plaintiffs are nice people but: (a) they are not adequate class representatives; and (b) their claims are not legally viable and subject to a number of individual defenses.

Plaintiffs' counsel are experienced attorneys who tactically chose not to spend time and expense on this case. Plaintiffs' counsel did not conduct a single deposition during the class certification discovery period. Plaintiffs' counsel received over 3,000 pages of documents from Darling during class discovery – but do not cite a single document in their motion for class certification. Plaintiffs' experts did not conduct any actual analysis – they simply outlined what analysis they think they could possibly do in the future.

It is important to note:

(a) Plaintiffs have presented no evidence or expert opinions that Darling was or is in violation of its Permit;

(b) Plaintiffs have presented no evidence or expert opinions that Darling was or is in violation of its Odor Control Plan; and

(c) In support of their statement that "Defendant's facility has been the subject of verified regulatory odor complaints, media reports, and civil rights litigation" (Motion, Dkt. 47, at 2), Plaintiffs cite a news article about the filing of their complaint (Dkt. 47-3) and a SJVAPCD Complaint Investigation which confirmed that Darling was "operating in compliance with their permit requirements" and that the odor source was likely a third party other than Darling (Dkt. 47-17, at 2).

It is well-established that the "rigorous analysis" the Court must perform in evaluating Plaintiffs' Motion "will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Plaintiffs clearly do not have any evidence to support their claims or their request for a class, and they chose not to conduct any actual analysis or investigation during class discovery which would expose that fact.

Plaintiffs' Motion should be denied.

## III.  <u>ARGUMENT</u>

"Rule 23 does not set forth a mere pleading standard" – plaintiffs must prove "*in fact*" that certification is warranted under the Court's "rigorous analysis." *Dukes*, 131 S. Ct. at 2551 (emphasis

2

in original); *see also Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (noting that "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question") (quotation and citations omitted)); *Parsons v. Ryan*, 754 F.3d 657, 683 (9th Cir. 2014) (although affirming certification, noting that "utterly threadbare allegations that a group is exposed to illegal policies and practices are [not] enough to confer commonality"). A plaintiff moving for class certification must provide *evidence* – not complaint allegations, speculation, promises of evidence or naked assertions of counsel.

Federal courts have repeatedly held - before and after *Dukes* – that environmental nuisance and negligence cases are not generally suitable for class certification. *See, e.g., Martinez v. Welk Group, Inc.*, Dist. No. 09cv2883, 2012 U.S. Dist. LEXIS 98433, *14-15 (S.D. Cal. July 13, 2012) (denying certification in part because claims of negligence and nuisance "depend upon the peculiar circumstances and experiences of each class member," such as "whether an individual stayed at the Resort, whether he saw mold, whether it impacted him or substantially interfered with his enjoyment of the property, and whether it harmed him"); *O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 414-418 (C.D. Cal. 2000) (decertifying sub-classes of individuals in part because "individualized, fact-intensive . . . statute of limitations issues preclude a finding that common issues predominate," as well as the fact "[c]haracteristics that vary from lot to lot must be considered in determining abatability.")[1]

---

[1] *See also Smith v. ConocoPhillips Pipe Line Co.*, 801 F.3d 921, 927 (8th Cir. 2015) (abuse of discretion to certify class in nuisance and negligence case regarding petroleum plant "in the absence of evidence showing class members were commonly affected by contamination on their property"); *Nolan v. Exxon Mobil Corp.*, Dist. No. 13-439, 2015 U.S. Dist. LEXIS 62619, at *18-22 (M.D. La. May 13, 2015) (denying class certification in nuisance case regarding purported releases of chemicals and odors from refinery); *Cannon v. BP Prods. N. Am.*, Dist. No. 3:10-CV-00622, 2013 U.S. Dist. LEXIS 142934, at *46-50 (S.D. Tex. Sept. 30, 2013) (denying class certification in a negligence, trespass and nuisance case based on purportedly harmful emissions within an area of "air pollution impact"); *Powell v. Tosh*, Dist. No. 5:09-cv-00121, 2013 U.S. Dist. LEXIS 120448, at *33-38 (W.D. Ky. Aug 2., 2013) (decertifying geography-based class certification in a nuisance and negligence case regarding hog barns); *Ginardi v. Frontier Gas Servs., LLC*, Dist. No. 4:11-cv-00420, 2012 U.S. Dist. LEXIS 54845, at *12-18 (E.D. Ark. Apr. 19, 2012) (denying geography-based class certification in a nuisance and negligence case related to purported air pollution); *Brockman v. Barton Brands, Ltd.*, Dist. No. 3:06-cv-332, 2007 U.S. Dist. LEXIS 86732 (W.D. Ky. Nov. 20, 2007) (denying geography-based class certification in a nuisance case related to purported emissions and noxious odors from a distillery.)

DEFENDANT DARLING INGREDIENTS INC.'S
MEMORANDUM IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

In fact, a California state court just denied class certification in a remarkably similar nuisance and negligence case **brought by Plaintiffs' counsel** against a resource recovery park and landfill in Milpitas, California. In *Ng v. Republic Servs.*, just like this case, the plaintiffs brought claims of nuisance and negligence and alleged that "on recurrent and intermittent occasions, their property, neighborhoods, residences and yards have been physically invaded by dust, debris, noxious odors, pollutants, and air contaminants."[2] Super. Ct. Santa Clara No. 1-12-cv-228591, 2015 Cal. Super. LEXIS 283, at *2 (Cal. Super. Ct. Jan. 28, 2015). Just like this case, Plaintiffs' counsel: (a) hired David Weeks as an expert (although in *Ng* he **actually performed** AERMOD testing in support of certification, unlike here); (b) defined the proposed class as "owner/occupants and/or tenants of residential property at any time from June 17, 2009 to the present" within a set geographic area; (c) submitted "data sheets" by area residents; and (d) argued for the same purported "myriad" common issues of law and fact. *Id.* at *2-8. The court denied certification, reasoning in part that Weeks' AERMOD modeling did not "provide some rational way to distinguish the odors [in the area] in order to attribute liability to Defendants," "the subjective descriptions of individual class members are too unreliable in the Court's opinion to objectively trace the experience odors to the landfill," and plaintiffs "do not adequately explain how the elements of causation and resulting injury will involve predominantly common questions," which "prevent[ed] the Court from granting certification on the nuisance and negligence claims." *Id.* at *27, 43-45.[3]

*Dukes/Comcast*, numerous Ninth Circuit and federal district court cases, and the court in *Ng* offer a roadmap for denying Plaintiffs' Motion.

---

[2] *See* Complaint, Dkt. 20, ¶ 7: "On recurrent and intermittent occasions, Plaintiffs' property including Plaintiffs' neighborhoods, residences, and yards have been and continue to be physically invaded by noxious odors, pollutants, and air contaminants."

[3] Other California state cases are in accord. *See, e.g., Department of Fish & Game v. Superior Court*, 197 Cal. App. 4th 1323 (Cal. App. 3d Dist. 2011); *Frieman v. San Rafael Rock Quarry, Inc.*, 116 Cal. App. 4th 29 (Cal. App. 1st Dist. 2004).

**A.** **The Court Should Deny Plaintiffs' Motion Because Plaintiffs Fail To Offer Any** _**Evidence**_ **to Support Their Motion and Request for Certification.**

Plaintiffs "bear[] the burden of demonstrating" that certification is appropriate under Rule 23. *Labou v. Cellco P'ship*, Dist. No. 2:13-cv-00844, 2014 U.S. Dist. LEXIS 26974, at *7 (E.D. Cal. Feb. 28, 2014) (citing *Conn. Ret. Plans & Trust Funds v. Amgen Inc.*, 660 F.3d 1170, 1175 (9th Cir. 2011)). In this case, they have utterly failed to do so.

- Plaintiffs did not submit any sworn testimony from anyone in the class, and Plaintiffs do not even cite deposition testimony of the class representatives. The only three declarations attached to the Motion are declarations of counsel.

- Plaintiffs did not submit any sworn testimony of any kind from anyone at Darling.

- Plaintiffs did not submit a single document from Darling's production of documents during class certification discovery.

- Plaintiffs failed to lay any foundation for their litigation-inspired, hearsay "Resident Data Sheets." (*See* Dkt. 47-10 & 47-11.)

Plaintiffs rely heavily on two expert reports from Dr. Timothy Bowser and Dr. David Weeks – but neither actually did any work. Dr. Bowser admitted during his deposition that he has not yet done the analysis needed to make any conclusions about the Plant. (*See* Bowser Report, Dkt. 47-4, at 8.) The report concludes that "a more in-depth evaluation of the facility operation" would be needed to make any conclusions, including "[w]hether the emissions from the Defendant's facility are the source of odors that are reported by area residents." (*Id.* at 9-10.) Bowser confirmed at his deposition that he has not done any work regarding the Plant and has no actual opinions about it:

> Q.·… then you list 15 steps, correct?
>
> A. That's correct.
>
> **Q. And you've not done any of those 15 steps?**
>
> **A. That's right, I have not. . . .**
>
> Q. Okay. But -- **but your report doesn't fulfill your first objective of identifying the sources of odor complaints**.

**A. That's right. It just provides some possibilities. Without a site visit**, it would be -- it is -- it is -- **I don't know how you could.**

(Bowser Dep., Ex. 4, at 37:20-38:2 and at 38:16-21 (emphasis added).)[4]

Dr. Weeks admitted that he has not reached any actual conclusions. He opined that he *could* perform AERMOD tests and air dispersion modeling to try to say something about the putative class – *but he has not performed any such tests*. (Weeks Report, Dkt. 47-3, at 9-10 (Conclusions and Opinions); Weeks Dep., Ex. 5, at 14:25-15:15.) He further confirmed that he has not obtained the potential meteorological data he mentions, and has not yet identified the "technical literature" that he says one could consult. (Weeks Dep., Ex. 5, at 23:6-24:15 and at 42:20-43:11.)  Weeks further admitted he is not sure whether necessary data is even available for the entire relevant time period or that required technical literature exists, and he has never been involved in a rendering plant modeling effort. (Weeks Dep., Ex. 5, at 25:2-9, at 39:23-40:21 and at 53:14-22.)

It is telling that in response to the loss in *Ng*, Plaintiffs' counsel chose not to proceed with the AERMOD testing during class discovery in this case.  Recognizing that the testing destroyed their class claims in *Ng*, Plaintiffs' counsel simply had Dr. Weeks testify what he "could" theoretically do – but told him not to do any actual analysis.  They want the Court to certify a class and then allow them to "clean up" the class definition during an expensive and convoluted multi-phase Trial Plan. This is precisely why the *Dukes/Comcast* progeny instructs courts to rigorously analyze the case at the class certification stage – to avoid improper class certification decisions based solely on allegations.

Plaintiffs' Motion is therefore "supported" by two expert reports which reach no admissible conclusions (Dkt. 47-3, 47-4); a newspaper article about the filing of their own complaint (Dkt. 47-

---

[4] Bowser testified he asked for a site visit, was not denied a site visit, but didn't make one because he apparently ran out of "time." (Bowser Dep., Ex. 4, at 40:2-9.) Bowser further admits he has never performed and is not qualified to perform a systematic odor assessment of Darling – the very **first** of his 15 steps he opines would need to be taken. (*Id.* at 18:11-21, at 20:20-21:7, at 32:11-14, at 37:15-38:2 and at 49:15-50:11.)

DEFENDANT DARLING INGREDIENTS INC.'S
MEMORANDUM IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

5); pleadings from a parallel case involving the City of Fresno and Darling and a draft agreement (Dkt. 47-6 to 47-9); a stack of "Odor Data Sheets" Plaintiffs' counsel purportedly obtained from residents under the guise of "Advertising Material" (Dkt. 47-10, 47-11); three declarations from Plaintiffs' counsel (Dkt. 47-12 to 47-14); a two-page complaint investigation from 2013 which concludes that the odor complaint relates to a third party (Dkt. 47-17); an unverified census report (Dkt. 47-18); and two unreported rulings from cases in Iowa and Pennsylvania (Dkt. 47-15, 47-16.)

The Court should not certify a class based on this paltry evidentiary record, and Plaintiffs cannot be allowed to sandbag and supplement the record with evidence for the first time in their reply. On this basis alone, certification should be denied.

## B. Plaintiffs' Class Definition is Overly Broad and Neither Precise Nor Ascertainable.

"[A]part from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." *McKinnon v. Dollar Thrifty Auto. Group, Inc.*, Dist. No. 12-cv-04457, 2015 U.S. Dist. LEXIS 97815, at *13-14 (N.D. Cal. July 27, 2015) (quotations and citation omitted); *Gooden v. Suntrust Mortg., Inc.*, Dist. No. 2:11-cv-02595, 2013 U.S. Dist. LEXIS 173511, at *11-12 (E.D. Cal. Dec. 11, 2013). "A class is not ascertainable when the proposed definition includes individuals who were never injured by the defendant's conduct . . . ." *Arredondo v. Delano Farms Co.*, 301 F.R.D. 493, 544 (E.D. Cal. 2014) (citations and quotations omitted). A class definition based on geographic boundaries must also bear some reasonable relation to the Defendants' allegedly wrongful activities. *Brockman*, 2007 U.S. Dist. LEXIS 86732, at *5-10 (collecting cases). There must also be a recognized plan for actually identifying class members and confirming that class members actually sustained harm. Plaintiffs have failed to meet this standard.

Plaintiffs seek to certify a class of: "All persons who were owner/occupants and renters of residential property within 1.5 miles of Defendant's rendering plant at any point between May 12,

2011 and the date the class is certified." (Motion, Dkt. 47-1, at 4.) This 1.5-mile radius is 50% less than the radius alleged in Plaintiffs' operative complaint. (Dkt. 20, ¶ 17.) More importantly, Plaintiffs have presented *no* evidence that any action by Darling bears any relationship to the proposed 1.5-mile geographic area. There is no evidence that odors can be smelled one mile, two miles, or five miles from the Darling Plant – and there is no evidence that this 1.5-mile radius is substantiated by anything other than Plaintiffs' counsel's decision to deviate from the operative complaint.

Accordingly, the 1.5-mile geographic radius is simply a guess and is an improper geographic range. *See, e.g., O'Connor v. Boeing North Am., Inc.*, 184 F.R.D. 311, 320 (C.D. Cal. 1998) (explaining rejection of a previous class definition based on geographic area because the plaintiffs "failed to provide the Court with sufficient evidence showing that these releases traveled throughout the entire Contamination Area") (quotation and citation omitted); *see also Ng*, 2015 Cal. Super. LEXIS 283, at *26, *46-47 (accepting defendants' argument that the class definition is overbroad because it includes some individuals who have denied that odors are an issue for them).

The *Brockman* case is also instructive. The plaintiffs in *Brockman* alleged pollution and noxious odors from a defendant's facility and sought to certify a class defined as owners or residents of single-family residences within two miles. 2007 U.S. Dist. LEXIS 86732, at *3. The court denied certification, noting that "courts have often declined to certify proposed classes where no evidence established a connection between defendants' conduct and the proposed class boundaries" or where the proposed class was defined by "arbitrarily . . . drawn lines on a map." *Id.* at *8-10 (citations and quotations omitted). Here, as in *Brockman*, "after . . . months of supposed class discovery, what is most startling about Plaintiffs' motion for class certification is the near-total lack of evidence linking the fallout and/or odors about which Plaintiffs complain to the substances emitted by Defendant. . . ." *Id.* at *12. As in *Brockman*, Plaintiffs' motion is insufficient because it "rests upon

DEFENDANT DARLING INGREDIENTS INC.'S
MEMORANDUM IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

complaints of residents . . . about various . . . odors on their property, a recital of the [potential] emissions from Defendant's facility, and [experts'] report[s] that it is possible that emissions from Defendant's plant could be related to those [odors]." *Id.* at *12.

Plaintiffs have demonstrated *no* evidentiary relationship between the 1.5-mile geographic boundaries of the proposed class definition and any emissions from Darling's facility. Indeed, Plaintiffs' expert Weeks testified that he had no idea what the class boundary should be because he has not done any modeling, and could not know until he did. (Weeks Dep., Ex. 5, at 15:4-6 and at 16:7-14.) Plaintiffs' expert Bowser similarly offers no testimony to support the 1.5-mile geographic radius.

In addition, Plaintiffs seek to certify a class of "owner/occupants and renters of residential property" between May 12, 2011 and the date the Class is certified. Plaintiffs offer no evidentiary support to explain how "occupants" and "renters" can be identified – much less how owners, occupants and renters could cohesively be part of the single proposed class. A home owner who has not lived in the home during the class period is not similarly situtated to a renter or an "occupant" and cannot be part of the same putative class. Similarly, a renter or home owner who purchased or moved to the area during the purported class period is differently situated from a renter or home owner who has resided in the area before the class period.  Mr. Coulson identifies in his declaration that the Missouri Census Data Center's demographic tool identies 4,745 "households" in the 1.5-mile radius. (Dkt. 47-12, ¶ 11.) Ignoring for the moment that the "tool" is not evidence and that Mr. Coulson is counsel and not able to testify, "households" is not part of the putative class definition.

Finally, the class definition cannot include individuals who have not suffered any harm. *See, e.g., Mazza v. American Hone Motor Co.*, 666 F.3d 581, 594-95 (9th Cir. 2012) ("No class may be certified that contains members lacking Article III standing"); *Moore v. Apple Inc.*, 309 F.R.D. 532, 541-542 (N.D. Cal. 2015) (uninjured members made class impermissibly overbroad); *McKinnon,*

2015 U.S. Dist. LEXIS 97815, at *20-21 (certification denied because plaintiffs failed to demonstrate that all members of the putative class were exposed to the alleged wrongful practice). There is no evidence in the record that would support the contention that all owners, occupants, and renters smelled odors from the Darling Plant at any time, much less on a continuous basis, and were harmed similarly by any alleged conduct by Darling – and there is no proposed plan to ensure that all putative class members actually have standing to pursue claims.

Plaintiffs' proposed class is not ascertainable, which is a separate and independent basis for denying Plaintiffs' Motion.

## C. The Requirements of Rule 23(a) Are Not Satisfied.

Even if the Court were to find that there is a sufficient evidentiary record and even if the proposed class were ascertainable, Plaintiff's Motion should still be denied because Plaintiffs have failed to meet their burden to establish the requirements of Rule 23(a).

### 1. Plaintiffs Fail to Satisfy The Commonality Requirement.

Rule 23(a) requires the existence of "questions of law or fact common to the class." "[T]he plaintiff [must] demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quotations and citation omitted). Their claims must "depend upon a common contention . . . capable of classwide resolution." *Id.*

The so-called "common issues" that Plaintiffs identify do not meet this requirement. (Motion, Dkt. 47-1, at 8.) None of the issues Plaintiffs identify are subject to common proof that, if established, will in one stroke resolve an issue that is central to the validity of *each one* of the claims for nuisance or negligence. *Dukes*, 131 S. Ct. at 2551. Rather, they require different proof and different analysis for each putative class member. (*See infra*, Section D.) Plaintiffs have presented *no* evidence that every putative class member even suffers from the same type or cause of alleged

harm.[5] This is fatal to their argument on commonality. *See, e.g.*, *Powell v. Tosh*, Dist. No. 5:09-cv-00121, 2013 U.S. Dist. LEXIS 120448, at *24 (W.D. Ky. 2013) (vacating certification in a nuisance suit regarding a hog facility and stating: "While some Plaintiffs do claim to have experienced substantial annoyance and/or an interference, some clearly do not, making this element of liability incapable of being resolved by a common answer.").

### 2. Plaintiffs Fail to Satisfy The Typicality Requirement.

The typicality requirement of Rule 23(a)(3) "looks to whether the claims of the class representatives [are] typical of those of the class, and [is] satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Labou*, 2014 U.S. Dist. LEXIS 26974, at *10 (quotation and citation omitted).

As discussed in more detail *infra*, Plaintiffs have failed to show that their claims arise from the *same course of events* as the other putative class members, and that they will make similar arguments to prove liability. *See Brockman*, 2007 U.S. Dist. LEXIS 86732, at *22 ("Without more information than has been presented by Plaintiffs, it is impossible for the Court to conclude that the proposed representatives are 'typical' of the class they purport to represent.") Rather, Plaintiffs' testimony and arguments demonstrate that their claims, and those of the putative class, arise from a multitude of *different* events, with *different* legal arguments to prove Darling's liability. Plaintiffs have failed to show typicality because they have failed even to explain their own theory or theories of liability, much less demonstrate that they share that theory with all members of the putative class.

---

[5] Plaintiffs have filed several "Resident Data Sheets" which are self-identified as "Advertising Material." For the reasons identified in the *Ng* decision regarding the same tactic from the same Plaintiffs' counsel, Darling believes that the Resident Data Sheets should be stricken from the record and not considered by the Court. *Ng*, 2015 Cal. Super. LEXIS 283, at *27. Darling intends to file a Motion to Strike.

If the Court decides to consider these "Resident Data Sheets," they suggest different types and frequencies of harm, and in some instances, a complete *lack* of harm. (*See* Motion, Dkt. 47-1, at 4 n.3 ("Plaintiffs have attached all responses to the Resident Data Sheet, including five (5) responses that do not indicate the presence of odor.").)

The only thing that Plaintiffs share with the putative class right now is a complete dearth of evidence. The Court should deny Plaintiffs' Motion.

### 3. Plaintiffs Fail To Satisfy The Adequacy Requirement.

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interest of the class." Fed. R. Civ. Pro. 23(a)(4). "[T]he Rule 23(a)(3) typicality inquiry overlaps with the Rule 23(a)(4) adequacy requirement because both look to the potential for conflicts in the class." *Labou*, 2014 U.S. Dist. LEXIS 26974, at *10 (quotation and citation omitted). "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at *15 (quotation and citation omitted). Plaintiffs have not met their burden of demonstrating these requirements.

Indeed, the named Plaintiffs here cannot even identify the location of Darling, or the source, frequency, or degree of the odor they purport to have suffered. Ms. Conroe testified that she has never been to the Darling facility or driven by it, does not know what it looks like, does not know any of the companies around it, does not know the direction of the plant from her house or which way the wind blows from the plant, and does not recall anyone ever telling her the alleged odor originated from Darling. (*See* Ms. Conroe Dep., Ex. 6, at 19:19-20:2, at 23:13-24, at 31:22-32:6, and at 36:2-9.) Mr. Conroe testified that he has no personal knowledge or facts supporting the allegation that odors which purportedly entered his property originated from Darling, nor has anyone else in the neighborhood told him that the alleged odor was coming from Darling. (Mr. Conroe Dep., Ex. 2, at 19:7-18 and at 32:3-7.)

Regarding the frequency and degree of the alleged odor, the named Plaintiffs could not, or would not, specify under oath. Mr. Conroe repeatedly testified that he cannot specify how often the purported odor occurs, whether daily, weekly, or monthly, could not say whether there were any periods since 1981 in which it was better or worse, could not say whether it was continuous or

12

intermittent, and would say only that "I do know when I smell it; I smell it." (*See, e.g.*, Mr. Conroe Dep., Ex. 2, at 14:3-16, at 21:20-22:11, at 22:5-11, at 25:11-25, at 25:24-26:3 and at 27:20-28:1.) Ms.Tapscott-Munson also could not specify the details of her odor accusation:

> Q. When did you first smell that odor?
>
> A. It's hard to say because it's a random odor. There is not a set schedule when the odor appears. It's random.
>
> Q. Once a month, once a quarter, once a six-month period?
>
> A. It's hard to say, to be able to narrow down a schedule, because it's random.

(Ms. Tapscott-Munson, Dep., Ex. 3, at 24:22-25:4.) The named Plaintiffs that remain in this case present absolutely no evidence that their inarticulable experiences and "random" alleged injuries are the same as the members of the class they propose, and thus the adequacy requirement is not met.

### D. The Requirements of Rule 23(b)(3) Are Not Satisfied.

Even if the Court finds that there is an evidentiary record, and that the proposed class is ascertainable, and that Plaintiffs have satisfied each of the Rule 23(a) requirements, Plaintiffs Motion should still be denied because Plaintiffs have failed to meet their burden to establish the requirements of Rule 23(b) – Predominance and Superiority.

#### 1. Plaintiffs Fail To Satisfy The Predominance Requirement.

"Rule 23(b)(3) looks to the predominance of common issues, requiring that a class may be maintained only where 'questions of law or fact common to class members predominate over any questions affecting only individual members.'" *Labou*, 2014 U.S. Dist. LEXIS 26974, at *19 (quoting Fed. R. Civ. P. 23(b)(2)-(3)). "If the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (quotations and citation omitted).

Plaintiffs' Motion fails to demonstrate that common issues predominate. This case poses a multitude of individualized questions, some of which are outlined below.

        *a.*      *Individualized Proof Is Needed To Determine Whether The Odor Emanates From Darling Or A Third-Party Source.*

It is undisputed that there are many potential sources of odor in the Fresno industrial area – and those potential third-party sources change over time and for any given event. Plaintiffs' expert Bowser admits that further testing is required before he could know "[w]hether the emissions from the Defendant's facility are the source of the odors that are reported by area residents." (Dkt. 47-4, at 10.) The question is real, not academic. Plaintiff Allen Conroe testified about another company located near the Plant, called Foster Farms. (Mr. Conroe Dep., Ex. 2, at 28:13-18.) Plaintiff Donna Conroe complains of a different odor, a "manure" smell, and testified that she is aware of farming near her home, and does not know if they use manure. (Ms. Conroe Dep., Ex. 6, at 18:11-22.) Given the many potential sources of odor, Plaintiffs' proof on causation will need to isolate the source(s) of each putative class member's alleged odors and link at least one of them to something that happened at Darling's Plant – a highly individualized effort on a core issue of fact. Whether the alleged odors were caused by Darling is an individual issue as to each putative class member. *See Martinez*, 2012 U.S. Dist. LEXIS 98433, at *14 (denying certification of negligence and nuisance claims in part because issues such as causation "depend upon the peculiar circumstances and experiences of each class member") (citation omitted); *Brockman*, 2007 U.S. Dist. LEXIS 86732, at *34.

        *b.*      *Individualized Proof Is Needed To Determine Whether One Or More Practices – Of Darling Or A Third Party – Caused The Odor.*

Plaintiffs experts' concede that the odors could be coming from multiple sources – from Darling or other third parties – but they have not taken any steps to actually determine the sources. Each member of the putative class would need individual evidence to prove liability based on the actual condition or event that allegedly caused that class member's odor problem. For example:

DEFENDANT DARLING INGREDIENTS INC.'S
MEMORANDUM IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

**Trucks –** Plaintiffs' expert Bowser states in his report that "[i]ntermittent sources" of odor "would include delivery vehicles." (Bowser Report, Dkt. 47-4, at 4.) Bowser speculates, without actually investigating or opining, that odors "may be due to . . . [t]ransport trucks that are odor sources." (*Id.* at 9.) This presupposes that any trucks at issue are Darling trucks and not a third party's trucks. But in any event, the proof remains highly individualized, because the trucks and drivers have changed over time and, independently, differ depending on Plaintiffs' property locations. Those are additional points of variation *within* the individualized category of truck odors.

**Routes –** Separately from the design or operation of trucks, Bowser also identifies truck *routes* as a potential issue. (Dkt. 47-4, at 4 (listing one odor control measure as "[s]elect transportation routes that avoid odor complaint areas").) The routes to and from different customers' facilities and the quantities hauled over those routes have changed over time and, independently, differ depending on Plaintiffs' property locations. This is a highly individualized issue.

**Leaks and Spills –** Bowser identifies "Leaks and spills" as additional potential sources of odor (again, not identifying any, but rather speculating that they could exist). (Bowser, Dkt. 47-4, at 6.) Bowser admits that "[t]he intensity and range of the odors will depend on the size of the exposed leak area." (Bowser Report, Dkt. 47-4, at 6.) Leaks and spills – by definition – are temporary events with temporary effects. There is no evidence that any leaks or spills occurred at Darling's facility or any third-party facility. But to the extent they can be a cause of odor, as Plaintiffs' expert opines, each leak or spill would require individual evidence about the affected putative class members.

**Unloading Operations –** Bowser lists "unloading operations" as another potential source of odor and speculates about "doors being opened simultaneously (and possibly other uncontrolled openings)." (Bowser Report, Dkt. 47-4, at 4, 9.) Putative class members making a claim regarding the unloading of various materials from various trucks at various times over the past several years will have individualized proof that is different from each other and from the rest of the class.

DEFENDANT DARLING INGREDIENTS INC.'S
MEMORANDUM IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

**Rendered Materials –** Bowser also asserts that different rendered materials have different types and levels of odor. He points out the different chemical compounds stemming from "animal carcass scraps," "[p]oultry emissions," and "[o]ffal from meat," and discusses the possibility, in theory, of odor-reducing steps such as "limit[ing] the times that the most odorous types of waste are accepted and processed" or "[r]equir[ing] prior notice for particularly odorous loads." (Dkt. 47-4, at 3-4.) Darling's input materials change from day to day, such that any putative class members claiming to be affected by particularly odorous materials would require highly individualized proof.

**Drainage And Rainfall –** Bowser identifies yet another theoretical odor issue – drainage and rainfall. (*Id.* at 6.) Bowser states that "[a]reas that drain poorly, as a result of inadequate slope, may become stagnant," can be worsened by "heavy rainfall events," and "may – in some cases – produce significant odor." (*Id.*) Weather events and drainage change over time and would affect different putative class members' properties differently. Accordingly, Plaintiffs' own expert report shows that drainage is another individualized issue – whether at Darling's facility or a third party facility.

**Continous v. Event-Specific –** Plaintiffs' Complaint alleges "recurrent and intermittent" odor, (Compl., Dkt. 20, ¶ 7), while the named Plaintiffs' sworn testimony could not narrow down whether the alleged odors are continuous, intermittent, or random. (*See supra*, Section C(3).) The variety of experience among Plaintiffs, and presumably the putative class members, regarding the frequency and duration of the alleged odors makes a four year, monolithic class improper.

It is obvious why Plaintiffs chose not to actually conduct any expert analysis in this case – They recognize that the analysis will show individualized issues and no common questions of fact or law which would support certification of the requested class.

> c. *Proving Liability For Nuisance And Negligence Will Require Individualized Proof.*

The elements of Plaintiffs' claims under California law involve yet more individual issues that are not subject to class-wide proof. For their claim of public nuisance, Plaintiffs must prove:

16

[1] that a defendant created (or had active involvement in creating) a condition that was harmful to health or interfered with the comfortable enjoyment of life or property; [2] that the condition affected a substantial number of people at the same time; [3] that an ordinary person would be reasonably annoyed or disturbed by the condition; [4] that the seriousness of the harm outweighs the social utility of the defendants' conduct; [5] that the plaintiff did not consent to the conduct; [6] that the plaintiff suffered harm that was different from the type of harm suffered by the general public; and [7] that the defendant's conduct was a substantial factor in causing the plaintiff's harm.

*Simpson v. Cal. Pizza Kitchen, Inc.*, No. 13-cv-164, 2013 U.S. Dist. LEXIS 153846, at *16 (S.D. Cal. Oct. 1, 2013) (citation and quotations omitted). The core elements of private nuisance are the same. *See Department of Fish & Game*, 197 Cal. App. 4th at 1352 (citation omitted). Each putative class member would need individual proof on multiple elements, such as: [1] harm to that member's health or enjoyment of property; [3] that the character and degree of odor on the member's property would disturb a reasonable person; and [4] an individualized balancing test regarding whether the seriousness of the harm to the class member outweighs the social utility of the defendants' conduct.[6]

Negligence, too, would require highly individuated proof. "Actionable negligence involves a legal duty to use due care, a breach of such legal duty, and the breach as the … legal cause of the resulting injury." *Raven H. v. Gamette*, 157 Cal. App. 4th 1017, 1024-1025 (Cal. App. 2d Dist. 2007) (quotation omitted). For each alleged source of odor and with respect to each alleged practice, piece of equipment, and circumstance at the Plant, each putative class member would need to prove that Darling owed a duty to him or her based on the circumstances, Darling's purported unreasonableness given the situation, and a causal link to the alleged injury.

In the face of these highly individualized elements, Plaintiffs advance a novel argument that environmental claims – involving nuisance and negligence or trespass – are especially suited to class action determination in California due to "objective" standards being applied. (Motion, Dkt. 47-1, at

---

[6] And with respect to public nuisance, an additional element is *directly contrary* to the class action mechanism: each putative class member would actually need to prove that his or her harm was "*different* from the type of harm suffered by the general public." *Simpson,* 2013 U.S. Dist. LEXIS 153846, at *16 (emphasis added).

17

11-12.) The Court should reject that argument. Indeed, California courts facing actions like this one have routinely denied class certification, applying standards that are the same as Federal Rule 23, including the California court's recent denial of class certification in *Ng. See Ng,* 2015 Cal. Super. LEXIS 283; *City of San Jose v. Superior Court*, 525 P.2d 701 (Cal. 1974); *Frieman v. San Rafael Rock Quarry, Inc.*, 116 Cal. App. 4th 29 (Cal. App. 1st Dist. 2004); *Department of Fish & Game*, 197 Cal. App. 4th at 1337.

> ### d. *Darling's Defenses Based On The Passage Of Time Will Require Individualized Proof.*

When considering Darling's defenses based on the passage of time, yet more individualized issues arise due to the standards governing Darling's time-bar defenses:

**Permanence vs. Abatability** – If a nuisance is "permanent," suit must be brought within three years of the creation of the nuisance. Cal. Code. Civ. Pro. 338; *Mangini v. Aerojet-General Corp.*, 12 Cal. 4th 1087 (Cal. 1996). If the nuisance can be discontinued or abated, on the other hand, then a claim lies for the continuation of it. *Id.* at 1103. The legal standard for whether a nuisance can be abated is if it "can be remedied at a reasonable cost by reasonable means." *Id.* Accordingly, each putative class member's claim(s) of odor will be subject to a test as to whether it began fewer than three years ago. If originating *more* than three years ago, it will be subject to the further test of whether it can be remedied at a reasonable cost by reasonable means.

**Continuing Negligence** – This Court held, at the motion to dismiss stage, that "[w]here . . . injury continues by reason of continued negligence, a recovery may be had for damages caused by the continuing negligence even if the claim for the original injury might be time barred." (Order, Dkt. 37, at 7.) The "continuing negligence" issue necessitates yet more individualized proof about the timing of the event(s) or condition(s) that each putative class member is claiming occurred.

e. *Proving The Nature And Extent Of Alleged Harm Will Require Individualized Proof.*

All of the above individualized issues concern core elements of causation and liability. In addition, there are many individual issues concerning damages:

- The alleged severity of the odor is personal to each property (due to weather, terrain, distance, etc.) and to each owner/renter (due to different expectations or intolerances).

- Alleged damages will vary widely based on whether the claimant has a physical illness purportedly caused or aggravated by the alleged odors.

- The alleged interruption of the enjoyment of property varies per claimant based on the activities he or she enjoys, whether family are involved, the presence of outdoor recreational structures on the property, etc. (*See, e.g.*, Ms. Tapscott-Munson Dep., Ex. 3, at 45:25-46:9 ("I have a gazebo…It's to provide shade for when we're in the backyard, enjoying the backyard.").)

- Some putative class members rent while others own, and they all have different move-in and purchase dates. (*See, e.g.*, Mr. Conroe Depo., Ex. 2, at 7:14-18; Ms. Tapscott-Munson, Dep., Ex. 3, at 23:8-15.) These factors, and their relation to *when* each alleged odor began, affect the alleged loss in property value.

Plaintiffs and their counsel cannot avoid these individual harms and the requisite proofs. The individual damages issues weigh heavily against class certification because the necessary mini-trials would be conducted on several different issues and are not susceptible to any standardized mathematical calculation or class-wide proofs.

f. *Plaintiffs' Admitted Potential Need For "Subclasses" Requires Yet More Individualized Proof.*

Plaintiffs themselves predict the need for sub-classes based on various factors. Plaintiffs' expert Weeks discusses the need to determine sub-classes through AERMOD testing "by considering differences in terrain elevation, land surface characteristics, and wind direction with respect to specific geographic sub-areas." (Weeks Report, Dkt. 47-3, at 9.) Weeks also states that "modeling results may be parsed to evaluate different levels of odor…or different levels of frequency that a specific location or area may experience those odors…" (*Id.* at 5.) Plaintiffs' own experts and proposed sub-classes thus reinforce that individual issues dominate this matter.

19

In summary, the individual issues in this case make each putative class member's claim a unique matrix of individualized proof. The property parcels, triggering events or circumstances, terrain, weather, causation analysis, type of harm, degree of harm, time-bar issues, and other factors all require individual proof. In short, individual issues predominate.[7]

### 2. Plaintiffs Fail To Satisfy The Superiority Requirement.

Because individual issues predominate, and because Plaintiffs fail to offer any actual *evidence* that meaningful class-wide proof is available, the class action mechanism is not superior to other mechanisms of adjudication. Trial of this matter as a class action would not be remotely manageable. Plaintiffs' proffered "trial plan" is a work of speculative fiction that would collapse as soon as it is applied to the matrix of putative class members' claims in this matter. It relies on assertions about tests that have not yet been attempted, and ignores the need to resolve core individual issues of causation and liability. In addition, Plaintiffs' Motion admits that other litigation is already ongoing on behalf of area residents regarding the Plant. The Motion states that Plaintiffs "are supportive of the progress made" in the other litigation, and merely speculates that "this action may be more likely to provide relief to area residents." (Motion, Dkt. 47-1, at 3.) Speculation cannot be the basis for an argument of superiority. The Court should deny Plaintiffs' Motion.

## IV. CONCLUSION

Plaintiffs chose not to conduct class discovery or submit actual class expert analysis for a reason – the evidence and expert analysis would not support Plaintiffs' Motion. The Court should not give Plaintiffs a free pass on class certification with a leap of faith that the class definition will be fixed, modified or divided into sub-classes during an unwieldy and complicated Trial Plan.

For the reasons discussed above, the Court should deny Plaintiffs' Motion and decline to certify the requested class.

---

[7] As noted above, although Darling is moving to strike the "Advertising Material" Plaintiffs have labeled as "Resident Data Sheets," if the Court decides to consider these sheets, they further illustrate the multitude of individual issues.

MCCORMICK, BARSTOW, SHEPPARD, WAYTE
& CARRUTH LLP

By: */s/ Christopher S. Hall*
Christopher S. Hall (CA Bar No. 203901)
7647 N. Fresno Street
Fresno, California 93722-8912
Phone: (559) 433-1300
Fax: (559) 433-2300
christopher.hall@mccormickbarstow.com

KEATING MUETHING & KLEKAMP PLL
Joseph M. Callow, Jr. (*admitted pro hac vice*)
Thomas F. Hankinson (*admitted pro hac vice*)
Jacob D. Rhode (*admitted pro hac vice*)
One East Fourth Street, Suite 1400
Cincinnati, Ohio 45202
Phone: (513) 579-6400
Fax: (513) 579-6457
jcallow@kmklaw.com
thankinson@kmklaw.com
jrhode@kmklaw.com

*Attorneys for Defendant Darling Ingredients Inc.*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Defendant's Memorandum in Opposition to Motion for Class Certification was filed via the Court's electronic filing system on this 1st day of March, 2016. The parties may access this pleading through the Court's electronic docketing system.

By: */s/ Christopher S. Hall*

6602423