UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| LINDA BROOKS, ET AL., | No.  1:14-cv-01128-DAD-EPG |
| Plaintiffs, |  |
| v. | ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, DENYING DEFENDANT'S MOTION TO STRIKE RESIDENT DATA SHEETS, AND DENYING DEFENDANT'S MOTION TO EXCLUDE EXPERT REPORTS |
| DARLING INTERNATIONAL, INC., |  |
| Defendant. |  |
|  | (Doc. Nos. 47, 51, 52) |

This matter is before the court on plaintiffs' motion for class certification as well as defendant's motion to strike and exclude evidence presented in support of plaintiffs' motion, specifically resident data sheets and expert reports.  A hearing on the motions was held on February 7, 2017.  Attorney Nicholas Coulson appeared on behalf of plaintiffs.  Attorneys Christopher Hall, Jacob Rhode, and Joseph Callow appeared on behalf of defendant.  Having considered the parties' briefs and oral arguments and for the reasons set forth below, the court will deny defendant's motion to strike the resident data sheets, deny defendant's motion to exclude the reports of plaintiffs' experts, and deny plaintiffs' motion for class certification.

/////

/////

1

## BACKGROUND

Defendant operates an animal rendering facility at 795 W. Belgravia Avenue in Fresno, California.  (Doc. No. 49 at 5.)  Animal rendering involves breaking down animal waste products—generally carcasses—into usable products, such as "valuable ingredients for various soaps, paints and varnishes, cosmetics, explosives, toothpaste, pharmaceuticals, leather, textiles, and lubricants."  *The Rendering Process*, NATIONAL RENDERS ASSOCIATION, http://www.nationalrenderers.org/about/process/ (last visited Aug. 29, 2016).  Defendant's facility is permitted to process up to 850,000 pounds of animal material each day.  (Doc. No. 47-1 at 7.)  Defendant operates its plant—purportedly located in the middle of an industrial area that is also home to other industrial facilities, farms, and agriculture businesses including some involved in animal processing—"pursuant to an Odor Control Plan and under a [p]ermit issued by the [District]."  (Doc. No. 49 at 5.)

On May 7, 2014, Donna Conroe, Allen Conroe, and Kimberly Tapscott-Munson ("plaintiffs") filed suit against Darling Ingredients ("defendant")—an owner and operator of a rendering plant—in the Fresno County Superior Court.  (Doc. No. 1.)[1]  Defendant removed the case to this court pursuant to 28 U.S.C. §§ 1332, 1441.  (*Id.*)  On August 13, 2014, plaintiffs filed their First Amended Complaint ("FAC").  (Doc. No. 20.)  Therein, plaintiffs claim that the rendering process, combined with defendant's alleged failure to implement proper controls, has infused their neighborhood with noxious odors and "forced [them] to live with the smell of rotting death at their homes."  (*Id.* at 8.)[2]

On February 2, 2016, plaintiffs filed a motion pursuant to Federal Rule of Civil Procedure 23 to certify the class of owner/occupiers and renters of residential property who lived within 1.5

---

[1]  Linda and Donald Brooks were also plaintiffs in this action when it was initiated.  However, on September 18, 2015 a stipulation of dismissal as to those two plaintiffs was filed with the court pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure.  (Doc. No. 43.)

[2]  Plaintiffs also note defendant has been the subject of odor complaints by residents made to the San Joaquin Valley Air Pollution Control District ("the District") as well as a lawsuit brought by a citizens group.  (Doc. No. 20 at 7) (citing Doc. Nos. 47-7, 47-17).  However, these allegations do not appear relevant to resolution of the pending motion for class certification.

miles of defendant's plant between May 12, 2011 and the date of class certification.  (Doc. No. 47.)  On March 1, 2016, defendant filed its opposition to that motion.  (Doc. No. 49.)  Plaintiffs filed a reply on March 15, 2016.  (Doc. No. 53.)  In support of their motion, plaintiffs submitted for the court's review a trial plan (Doc. No. 47-2), a preliminary air modeling report drafted by Board Certified Environmental Engineer David Weeks, P.E. (Doc. No. 47-3), a preliminary report on odor sources and mitigation prepared by Professor of Food Process Engineering Dr. Timothy Bowser, P.E. (Doc. No. 47-4), and 160 survey responses, which plaintiffs titled "Resident Data Sheets" (Doc. Nos. 47-10, 47-11).

On March 15, 2016, defendant filed two separate motions attacking plaintiffs' evidentiary support for their motion for class certification.  (Doc. Nos. 51, 52.)  The first such defense motion is a motion to strike an exhibit—labeled "Resident Data Sheets"—which plaintiffs' attached to their class certification motion.  (Doc. No. 51.)  The second motion is a motion to exclude the reports of plaintiffs' experts.  (Doc. No. 52.)  Plaintiffs filed oppositions to both of defendant's motions on March 30, 2016.  (Doc. Nos. 54, 55.)[3]

Below, the court will first address defendant's motions before turning to plaintiffs' motion for class certification.

## MOTION TO STRIKE THE RESIDENT DATA SHEETS

Defendant moves to strike the Resident Data Sheets submitted by plaintiffs.  The Resident Data Sheet exhibit consists of seventy-two one-page surveys sent out by plaintiffs' counsel to residents in the neighborhood surrounding defendant's plant.  (Doc. No. 47-10, 47-11.)  The forms are marked as "advertising material" and were sent to residents in conjunction with a notice explaining that plaintiffs' counsel was "investigating the possibility of filing litigation against Darling International for the emission of noxious odors."  (Doc. No. 51-2 at 3.)  The survey asked the respondent if he or she owns the home or is a tenant, the length of time he or she has resided at the property, and whether he or she has "noticed odors from Darling International at [his or her] home."  If the respondent answers yes to this last question, he or she was then requested to

---

[3]  The hearing on the motion for class certification and the motions to strike and exclude were continued several times pursuant to the parties' stipulations.  (Doc. Nos. 59, 63, 66 and 69.)

1   elucidate on the character, duration, effect of the offensive odors.  The respondent was also asked

2   to sign and date the survey in the designated fields, above which reads "I swear that the above

3   answers are true and accurate to the best of my knowledge."

4        Defendant argues the Resident Data Sheets constitute inadmissible hearsay because they

5   are not notarized and not signed under penalty of perjury.  (Doc. No. 51-1 at 4.)  Defendant also

6   argues the Resident Data Sheets are the equivalent of a "push poll" because "[t]here was no

7   option on the questionnaire to indicate that odors may have emanated from a third-party source . .

8   . ." (*Id.* at 2.)  Plaintiffs contend the declarations should not be stricken because courts are not

9   prohibited from considering inadmissible evidence at the class certification stage of litigation.

10       "In determining whether a class is to be certified, the [c]ourt looks to the parties'

11   allegations and other material 'sufficient to form a reasonable judgment on each requirement.'"

12   *Parkinson v. Hyundai Motor America*, 258 F.R.D. 580, 599 (C.D. Cal. 2008) (quoting *Blackie v.*

13   *Barrack*, 524 F.3d 891, 901 (9th Cir. 1975)).  Although the Ninth Circuit has not explicitly stated

14   as much, district courts have concluded that this "other material" need not be admissible in order

15   to be considered by the court at class certification.  *See Arredondo v. Delano Farms Co.*, 301

16   F.R.D. 493, 505 (E.D. Cal. 2014) ("Since a motion to certify a class is a preliminary procedure,

17   courts do not require strict adherence to the . . . Federal Rules of Evidence.") (citing *Eisen v.*

18   *Carlisle and Jacquelin*, 417 U.S. 156, 178 (1974)).

19       On the other hand, the court "should not abandon admissibility standards entirely at the

20   certification stage," *Parkinson*, 258 F.R.D. at 599, because it must still perform a "rigorous

21   analysis" when determining whether a party has satisfied the burden of establishing compliance

22   with Rule 23.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011).  In this respect,

23   district courts are left to tread the line between not enforcing the Federal Rules of Evidence at the

24   class certification stage of the litigation while still ensuring that "[a] party seeking class

25   certification . . . affirmatively demonstrate[s] . . . that there are *in fact* sufficiently numerous

26   parties, common questions of law or fact, etc."  *Dukes*, 564 U.S. at 350.

27       One question on which there has been little consensus among district courts is how to treat

28   declarations submitted in support of class certification that are not executed under penalty of

4

1    perjury.  Generally, for a declaration to be admissible, the declarant must "declare . . . under

2    penalty of perjury . . . ."  28 U.S.C. § 1746.  Some courts have found this requirement

3    inapplicable at class certification, noting that while the declarations may be inadmissible at later

4    stages, "strict adherence to the Federal Rules of Evidence" is not required at class certification.

5    *Gonzalez v. Millard Mall Services, Inc.*, 281 F.R.D. 455, 459–60 (S.D. Cal. 2012) (citing *Eisen*,

6    417 U.S. at 178); *see also Bell v. Addus Healthcare, Inc.*, No. CO6-5188RJB, 2007 WL 2463303,

7    at *3 (W.D. Wash. Aug. 27, 2007) (permitting submission of declarations not executed under

8    penalty of perjury).  Other courts have been less forgiving.  *See Soto v. Castlerock Farming and*

9    *Transportation, Inc.*, No. 1:09-cv-00701-AWI-JLT, 2013 WL 6844377, at *10 (E.D. Cal. Dec.

10   23, 2013) *report and recommendation adopted*, No. 1:09-CV-00701-AWI, 2014 WL 200706

11   (E.D. Cal. Jan. 16, 2014) (striking declarations not signed under penalty of perjury); *Charlebois v.*

12   *Angels Baseball, LP*, No. SACV 10-0853 DOC (ANx), 2011 WL 2610122, at *8 (C.D. Cal. June

13   30, 2011) (declining "to consider any evidence submitted by Plaintiff that comes by way of an

14   unsigned declaration" because such evidence "lack[ed] any indicia of reliability").

15          Though not signed specifically under penalty of perjury, the court notes that the signed

16   surveys at issue here cannot accurately be characterized as unsworn since the signers swore that

17   the information was true and correct to the best of the signer's ability.  In any event, strict

18   adherence to the rules of evidence is not required at this stage of the proceedings.  Additionally,

19   the surveys are not being offered for the truth of the matters asserted therein, rather, as plaintiffs'

20   counsel has explained, they are merely "illustrative of the resident testimony that plaintiffs will be

21   offering at the class certification stage in conjunction with scientific expert testimony."  (Doc. No.

22   73 at 6.)  According to plaintiffs, the completed surveys "also demonstrate widespread interest in

23   the litigation."  (*Id.*)  Courts that have struck declarations not signed under penalty of perjury

24   have done so because they lacked any indicia of reliability.  *See, e.g. Charlebois*, 2011 WL

25   2610122, at * 8 (noting that, the declarations offered were "unsigned, or were not even written by

26   the declarants themselves, but were recounted by memory of counsel's staff after speaking with

27   declarants.")

28   /////

Here, the signed surveys submitted by plaintiffs are accompanied by some indicia of reliability: (1) the signers have themselves written out a description of the odors and how they affect their ability to use and/or enjoy their home; and (2) the surveys are signed and sworn to be true and accurate to the best of the signer's knowledge.  Accordingly, the court finds that the Resident Data Sheet surveys should not be excluded at this stage of the proceedings and may be considered by the court in determining whether class certification is warranted.  Therefore, defendant's motion to strike the resident data sheets will be denied.

## MOTION TO EXCLUDE THE OPINIONS OF DAVID WEEKS
## AND TIMOTHY BOWSER

Defendant also moved to exclude the expert reports of Environmental Engineer David Weeks and Professor of Food Process Engineering Dr. Timothy Bowser.  Defendant argues the opinions expressed in those reports are "irrelevant, unhelpful, and speculative" because plaintiffs' experts have yet to perform any relevant testing.  (Doc. No. 52-1 at 5–6.)  Defendant notes that the reports posit only what testing could be performed rather than reporting results obtained from testing that has been conducted.  (*Id.* at 6.)  Plaintiffs argue that defendant has failed to attack the credentials of their experts or the reliability of their experts' testimony.  (Doc. No. 54 at 3.)  Instead, according to plaintiffs, defendant inappropriately seeks to exclude the expert reports on the grounds that they do not address the merits of plaintiffs' claims even though discovery with respect to the merits has yet to commence in this case.  (*Id.* at 1.)

a. *Legal Standard*

Generally, the admission of expert testimony is controlled by Federal Rules of Evidence 702 and the decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). "[Federal Rule of Evidence 702] consists of three distinct but related requirements: (1) the subject matter at issue must be beyond the common knowledge of the average layman; (2) the witness must have sufficient expertise; and (3) the state of the pertinent art or scientific knowledge permits the assertion of a reasonable opinion."  *United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002).  "Prior to the evaluation of those three requirements, however, *Daubert* holds that a trial court must make 'a preliminary assessment of whether the reasoning or methodology

1  underlying the testimony is scientifically valid and of whether that reasoning or methodology

2  properly can be applied to the facts in issue.'" *Spann v. J.C. Penny Corp.*, 307 F.R.D. 508, 515–

3  16 (C.D. Cal. 2015) (quoting *Daubert*, 509 U.S. at 592–93).   However, "at the class certification

4  stage, district courts are not required to conduct a full *Daubert* analysis." *Tait v. BSH Home*

5  *Appliances Corp.*, 289 F.R.D. 466, 495 (C.D. Cal. 2012).   The general standard by which district

6  courts perform their gatekeeping function during the merits phase of an action is replaced at class

7  certification with "an analysis tailored to whether an expert's opinion was sufficiently reliable to

8  admit for the purpose of proving or disproving Rule 23 criteria, such as commonality and

9  predominance." *Id.*   "[T]he court should ask only if expert evidence is useful in evaluating

10  whether class certification requirements have been met." *Id; see also Herron v. Best Buy Stores,*

11  *LP*, No. 2:12-cv-02103-TLN-CKD, 2016 WL 1572909, at *2 (E.D. Cal. Apr. 18, 2016) (noting

12  "robust gatekeeping of expert evidence is not required" at the class certification stage).

13       Here, for the reasons explained below, the court concludes that the preliminary reports by

14  plaintiffs' experts are useful for purposes of determining whether class certification requirements

15  have been met as of yet.[4]

16     b.   *Analysis*

17        i.   *David Weeks's Report*

18       In his report, Environmental Engineer David Weeks concludes that potential class

19  members' exposure to noxious odors over the duration of the proposed class period can be

20  assessed by using the American Meteorological Society/EPA Regulatory Model ("AERMOD"),

21  "the preferred model for short-range dispersion modeling" of the Environmental Protection

22  Agency.   (Doc. No. 47-3 at 7.)   AERMOD is a proven method, and its use in creating air

23  dispersion models has received approval from a federal regulatory agency.   Defendant does not

24  challenge this fact; nor does it challenge the ability to apply AERMOD to the case at hand.

25  Moreover, Mr. Weeks states in his report that the data needed to construct a model is available

26  and that AERMOD can differentiate between "odor complaints originating from multiple

27

28  [4]   Although, this is the case more because of what those preliminary reports fail to establish as much, if not more, than because of what is set forth therein.

1    sources." (*Id.* at 9.)  Mr. Weeks concedes that AERMOD is not "100 percent accurate 100

2    percent of the time."  Nonetheless, this is an issue the parties could contest at the merits phase of

3    this litigation.  (*Id.*)  Ultimately, the Weeks report supports the notion that AERMOD can be used

4    to show the range, frequency, and impact of the alleged odor emissions; in other words, such

5    testing can be used to establish commonality and predominance.  Accordingly, the court

6    concludes that Mr. Weeks's expert report satisfies the requirements of *Daubert* for purposes of

7    determining the appropriateness of class certification.  Furthermore, Mr. Weeks is a licensed

8    engineer who has experience with air dispersion modeling and is an expert under the

9    requirements of Federal Rule of Evidence 702.  Finally, the subject matter is one that is

10   appropriate for expert opinion.  Thus, as to Mr. Weeks's expert report, defendant's motion to

11   strike will be denied.

12           *ii.     Dr. Timothy Bowser's Report*

13           The court also finds Dr. Timothy Bowser's report admissible for the purpose of these class

14   certification proceedings.  In his report Dr. Bowser discusses testing methods that would allow

15   him to assess "[t]he sources within the rendering facility which are responsible for odor

16   emissions" as well as "[t]he effectiveness of mitigation efforts taken by [defendant], and the

17   potential effectiveness of further mitigation efforts."  (Doc. No. 47-4 at 10.)  In his report, Dr.

18   Bowser also discusses the ability to perform a systematic odor assessment and states that

19   "[i]nternational standards are available to guide the methods and practices of odor measurement."

20   (*Id.* at 4.)  The court sees no reason not to consider this expert opinion that a method exists to

21   trace the source and level of odor emissions.  Dr. Bowser's report would appear to be helpful in

22   addressing the requirement of commonality under Rule 23.

23           Dr. Bowser is a Professor of Food Process Engineering at Oklahoma State University with

24   over 30 years of experience in the food processing industry and has written several papers and

25   book chapters on the subject.  (*Id.* at 1.)  Moreover, industrial food processing engineering is a

26   subject that lies beyond the knowledge of the average, untrained layperson.  Accordingly, Dr.

27   Bowser satisfies the requirements of Federal Rule of Evidence 702.  For these reasons, the court

28   denies defendant's motion to strike the expert report of Dr. Bowser.

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

    a.   *Legal Standard*

      The class action is a procedural mechanism whereby the "usual rule that litigation be conducted by and on behalf of the named parties only" is swept aside so that multiple parties— unwieldly in number but possessing similar or identical claims—may pursue common redress in an efficient and economical manner. *Comcast v. Behrend*, 569 U.S. —, —, 133 S. Ct. 1426, 1432 (2013) (quoting *Dukes*, 564 U.S. at 348). *See also Abdullah v. U.S. Sec. Associates, Inc.*, 731 F.3d 952, 963–64 (9th Cir. 2013). Federal Rule of Civil Procedure 23 controls class certification and imposes a two-step process designed to ensure not only that this system of representative adjudication nets expediencies for the litigants and the judiciary, but that it does not sacrifice procedural fairness or zealous advocacy in the process of doing so.

      Rule 23(a) is a hurdle that must be overcome for a case to proceed as a class action. It consists of four prerequisites, often described as: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. If—and only if—a putative class satisfies these four requirements may the plaintiffs attempt to show that the class also satisfies one of the three subsections of Rule 23(b). The party seeking class certification bears the burden of establishing conformity with these requirements, and must do so by producing facts "affirmatively demonstrat[ing]" that certification is warranted. *Comcast*, 133 S. Ct. at 1432; *Dukes*, 564 U.S. at 350; *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1115 (9th Cir. 2017). A court must review the merits of a party's substantive claim to the extent that they overlap with issues touching on class certification. *Dukes*, 564 U.S. at 351 ("[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.' [citations omitted]"); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) ("[I]t is not correct to say a district court may consider the merits to the extent that they overlap with class certification issues; rather, a district court must consider the merits if they overlap with the Rule 23(a) requirements.") (citing *Dukes*, 564 U.S. at 350-51 and *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992)); s*ee also Blair v. The CBE Group, Inc.*, 309 F.R.D. 621, 625 (S.D. Cal. 2015). Only after it has conducted a "rigorous analysis" of these facts and determined they show actual, and not

1    presumed, conformance with Rule 23(a) and (b), may a district court certify a class. *Ellis*, 657

2    F.3d at 980–81 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S 147, 160, 161 (1982)); *see also*

3    *Comcast*, 133 S. Ct. at 1432 (extending the "rigorous analysis" requirement to Rule 23(b)); *Patel*

4    *v. Nike Retail Services, Inc.*, Case No. 14-cv-4781-RS, 2016 WL 1241777, at *3 (N.D. Cal. Mar.

5    29, 2016) ("This 'rigorous' analysis applies both to Rule 23(a) and Rule 23(b).").[5]

6            As an initial and practical matter, however, the court should first determine whether the

7    class is ascertainable. That is a problematic question in this case, given the slim basis for the

8    class definition proposed by plaintiffs in their pending motion, and the court turns to it below.[6]

9            b.  *Definiteness*

10           "[T]he Ninth Circuit [and] the Supreme Court [have not] explicitly acknowledge[ed] in

11   any published opinion that 'ascertainability' or 'definiteness' is a required element of class

12   certification that imposes obligations independent of the enumerated Rule 23 factors." *Lilly v.*

13   *Jamba Juice Co.*, 308 F.R.D. 231, 236 (N.D. Cal. 2014). However, in dicta and unpublished

14   opinions, the Ninth Circuit has suggested that a class must nonetheless be ascertainable if it is to

15   be certified. *See id.* (citing *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1071, n.4 (9th Cir.

16   2014), *Pierce v. County of Orange*, 526 F.3d 1190, 1200 (9th Cir. 2008), and *Martin v. Pac.*

17   *Parking Sys. Inc.*, 583 F. App'x. 803, 804 (9th Cir. 2014)). There are three concerns in

18   determining whether ascertainability is satisfied:

19                   (1) whether the class action can be ascertained by reference to
                     objective criteria; (2) whether the class includes members who are
20                   not entitled to recovery; and (3) whether the putative named
                     plaintiff can show that he will be able to locate absent class
21                   members once a class is certified.

22   *Ebarle v. Lifelock, Inc.*, No. 15-cv-00258-HSG, 2016 WL 234364, at *5 (N.D. Cal. Jan. 20,

23   2016). Determining that a class is ascertainable is "meant to ensure the proposed class definition

24   _____

25   [5]  If a court does certify a class, it must define the class claims and issues and appoint class
     counsel. Fed. R. Civ. P. 23(c)(1), (g).

26   
27   [6]  Whether one views it as an issue of ascertainability, commonality or predominance, the
     problem here is a definitional deficiency in plaintiffs' rationale for seeking certification of a class
     defined as those located within a 1.5-mile radius of defendant's facility—a definition that does
28   not appear to be grounded upon any sufficiently supported objective justification.

1  will allow the court to efficiently and objectively ascertain whether a particular person is a class

2  member." *Pena v. Taylor Farms Pacific, Inc.*, 305 F.R.D. 197, 206 (E.D. Cal. 2005); *see also*

3  *Henry v. Home Depot*, Case No. 14-cv-4858-JST, 2016 WL 1755398, at *8 (N.D. Cal. May 3,

4  2016) ("[A] class definition is sufficient if the description of the class is 'definite enough so that it

5  is administratively feasible for the court to ascertain whether an individual is a member.'")

6  *Vietnam Veterans of Am. v. C.I.A.,* 288 F.R.D. 192, at 211-12 (N.D. Cal. 2012) ("Where the class

7  definition proposed is overly broad or unascertainable, the court has the discretion to narrow it.").

8      Defendant argues that here the proposed class definition is overbroad and not

9  ascertainable.  Specifically, defendant notes that in their complaint plaintiffs alleged a class made

10  up of those within three miles of its facility, that they now propose a class made up of those

11  within a 1.5-mile radius of the facility, that plaintiffs have presented no evidence showing that

12  defendant "bears any relationship to the proposed 1.5-mile geographic area," and that the class

13  definition incorporating that 1.5-mile radius is baseless, improper and purely speculative.  (Doc.

14  No. 49 at 12.)  Additionally, defendant contends that plaintiffs have not offered any evidence

15  indicating how owners/occupants and renters who are class members will be identified.  (*Id.* at

16  13.)  Furthermore, according to defendant, the proposed class definition includes "individuals

17  who have not suffered any harm" because there is no evidence that all the owners, occupants, or

18  renters within the 1.5-mile radius of the facility were affected by any odors.  (*Id.* at 13–14.)

19      Plaintiffs respond that the class "clearly includes two categories of persons,

20  'owner/occupants' and 'renters' of residential property.  (Doc. No. 53 at 5.)  According to

21  plaintiffs, persons who own but do not occupy residential property within the 1.5-mile radius area

22  are therefore outside the class definition.  (*Id.*)  Plaintiffs contend, however, that "while renters

23  and owner/occupants will have differing damages, they are indeed similarly situated for purposes

24  of this litigation."  (Id. at 5–6.)  While this contention may be apt for purposes of ascertaining the

25  class members, the court finds plaintiffs' objective criteria establishing the geographic boundaries

26  of the class proposed for certification to be far more questionable.

27      An adequate basis for a proposed class definition is uniquely important in class action

28  cases presenting toxic tort or nuisance claims based on alleged environmental harm.  As one court

has observed in addressing the definition of the class in such a case:

> Often an objective characterization of exposure to a particular substance defines class members. Other times, courts define classes by geographical boundaries, but in such circumstances, courts often seek a reasonable relationship between the proposed boundary and the defendants' allegedly harmful activities. Regardless, courts have rejected proposed classes where plaintiffs failed to "identify any logical reason . . . for drawing the boundaries where they did." *See, e.g., Daigle v. Shell Oil Co*., 133 F.R.D. 600, 603 (D. Colo. 1990) (holding that plaintiffs had "failed to identify a class" where the proposed boundaries did not appear to "relat[e] to the defendants' activities"). Usually, scientific or objective evidence closely ties the spread of the alleged pollution or contamination to the proposed class boundaries. *See, e.g., Boggs v. Divested Atomic Corp*., 141 F.R.D. 58, 61 (S.D. Ohio 1991).

*Brockman v. Barton Brands, Ltd.*, No. 3:06CV-322-H, 2007 WL 4162920, at *2 (W.D. Ky. Nov. 21, 2007); *Burkhead v. Louisville Gas & Electric Company*, 250 F.R.D. 287, 293 (W.D. Ky. 2008) ("To be clear, the Court is not troubled by the lack of such evidence merely because the Court fears individualized or non-uniform damage calculations, but rather because without it there seems to be virtually no evidence in the record that distinguishes members of the proposed class from the general public based upon acts of LG & E."); *see also Powell v. Tosh*, 280 F.R.D. 296, 312 (W.D. Ky. 2012), *on reconsideration*, No. 5:09-CV-121, 2012 WL 2601946 (W.D. Ky. July 5, 2012) (granting class certification in a nuisance/negligence suit brought by landowners against owners of a swine barn over noxious orders after considering plaintiffs' expert report "stating that the barn produces an effect that extends 1.25 miles from the Ron Davis Hog Barn in all directions" and which supported a finding that the class as defined was definite); *O'Connor v. Boeing N. Am. Inc.*, 180 F.R.D. 359, 368 (C.D. Cal. 1997) (noting that, "[c]ourts have found that a definable class may be established by geographic boundaries[,]" and listing cases where the class was certified based on those boundaries as determined in the reports of experts).

Here, nothing in the expert reports before the court indicates any rationale behind plaintiffs' choosing of a 1.5-mile radius as the geographic boundary for the proposed class. Indeed, the only mention of the area involved appears to be in Dr. Bowser's report where it is indicated that residential areas are located within a quarter mile of defendant's facility. (Doc. No. 47-4 at 7, Ex. 3.) At oral argument on the pending motion, plaintiffs' counsel explained that the

1.5-mile radius aspect of the proposed class definition was based upon a "preponderance of the people who have contacted [the] firm either through resident data sheets or otherwise, or who have, I believe, made complaints to a governmental entity." (Doc. No. 73 at 18.)  Plaintiffs' counsel also represented that the 1.5-mile radius currently includes people most severely impacted by the odor issue and is, therefore, a conservative geographic boundary.  The court construes these representations as essentially indicating that plaintiffs' counsel based the definition of the class now proposed for certification, not upon any preliminary finding made by their experts or upon a thorough analysis of a detailed survey of those possibly impacted areas, but rather upon their own interpretation of the limited information available to them.

The court in *Brockman* found a similar basis insufficient for purposes of ascertaining a class definition:

> At bottom, Plaintiffs' motion rests upon complaints of residents in the Bardstown area about various substances and odors on their property, a recital of the emissions of the Defendant's facility, and Dr. Wabeke's report that it is possible that emissions from Defendant's plant could be related to those substances.  Nowhere in Plaintiffs' evidence has the Court found, for example, test results for any substances Plaintiffs allege have fallen onto their property, or any sort of analysis of where the emissions of Defendant's plant spread once they leave Defendant's smokestack.  These omissions are particularly glaring given how seemingly easy it would be for Plaintiffs to have obtained such information and how frequently such information plays a key role in class certification decisions for other courts in similar cases.

*Brockman*, 2007 WL 4162920 at *4.  Similarly, the undersigned concludes that plaintiffs have failed to adequately define the proposed class here.  Plaintiffs argue that, in a literal sense, class members are certainly ascertainable based upon their proposed 1.5-mile radius class definition.  The problem is that the 1.5-mile radius aspect of the class definition has no acceptable basis in objective fact and is therefore arbitrary.  This failure would appear to be based at least in part upon plaintiffs' decision not to conduct any preliminary scientific testing, or even to undertake a thorough analysis of a detailed survey of those possibly impacted areas, for submission in support of their class certification motion and to rest instead on their argument that testing was relevant only to the merits phase of this litigation.  In short, plaintiffs have failed to carry their burden of demonstrating that certification of their proposed class is warranted.  *See Haight v. Bluestem*

13

1   *Brands, Inc.*, Case No. 6:13-cv-1400-ORL-28KRS, 2015 WL 12830482, at *3–4. (M.D. Fla. May

2   14, 2015), *report and recommendation adopted*, No. 6:13-cv-1400-ORL-28KRS, 2015 WL

3   12835994 (M.D. Fla. June 1, 2005) (noting that, it is the plaintiffs' burden to establish

4   ascertainability and concluding that due to their failure to present reasonably available evidence

5   the court was unable to conclude that plaintiffs had met that burden), *report and recommendation*

6   *adopted* 2015 WL 12835994 (M.D. Fla. June 1, 2015); *Groussman v. Motorola, Inc*., Case No. 10

7   C 911, 2011 WL 5554030, at *7 (N.D. Ill. Nov. 15, 2011) ("Plaintiffs, as movants, had the burden

8   to delineate an appropriate proposed class definition and have failed to do so."); *Humphrey v.*

9   *Int'l Paper*, Case No. 02 C 4147, 2003 WL 22111093, at *5 (N.D. Ill. Sept. 11, 2003) ("Since it is

10  the burden of the plaintiffs to establish all of the requirements for class certification . . . the

11  serious inadequacy of the proposed class definition is reason enough to deny the motion.").

12          Nonetheless, below the court will address whether the additional requirements for class

13  certification have been met since the deficiency discussed above may be capable of being cured

14  through the submission of results from preliminary scientific testing or other means providing

15  some adequate basis for the proposed class definition.  *See Briseno v. ConAgra Foods, Inc.*, 844

16  F.3d 1121, 1124, n. 4 (9th Cir. 2017) ("[W]e have addressed the types of alleged definitional

17  deficiencies other courts have referred to as "ascertainability" issues . . ., through analysis of Rule

18  23's enumerated requirements.  *See, e.g., Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136–

19  39 (9th Cir. 2016) (addressing claim that class definition was overbroad—and thus arguably

20  contained some members who were not injured—as a Rule 23(b)(3) predominance issue); *Probe*

21  *v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986) (recognizing that a class must not

22  be vaguely defined and must be "sufficiently definite to conform to Rule 23")).[7]

23  /////

24  /////

25

26  [7] "It is appropriate to deny a motion without prejudice where . . .  the plaintiffs have failed to
    submit sufficient evidence in support of class certification."  *Newberry v. County of San*

27  *Bernardino*, No. EDCV 14-2298 JGB (SPX), 2015 WL 9701153, at *7 (C.D. Cal. July 23, 2015);
    *see also In re Apple ipod iTunes Antitrust Litig.*, No. C 05-00037 JW, 2008 WL 5574487, at *5, 9

28  (N.D. Cal. Dec. 22, 2008).

1          c.   *Rule 23(a)*

2               i.   *Numerosity*

3          Rule 23 requires a class be so numerous that joinder of all members individually is

4   "impracticable."  Fed. R. Civ. P. 23(a).  This "does not mean that joinder must be impossible, but

5   rather means only that the court must find that the difficulty or inconvenience of joining all

6   members of the class makes class litigation desirable."  *Millan v. Cascade Water Servs., Inc.*, 310

7   F.R.D. 593, 603 (E.D. Cal. Oct. 8, 2015) (quoting *In re Itel Sec. Litig.*, 89 F.R.D. 104, 112 (N.D.

8   Cal. 1981)).  *See also Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913–14 (9th

9   Cir.1964); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 588 (C.D. Cal. 2008).  A plaintiff

10  seeking class certification is not required to show that the number of potential class members

11  exceeds an established threshold.  *Gen. Tel. Co. v. E.E.O.C.*, 446 U.S. 318, 330 (1980).  That

12  said, a potential class consisting of at least forty members will generally be treated as satisfying

13  the numerosity requirement. *See Odgen v. Bumble Bee Foods, LLC*, 292 F.R.D. 620, 624 (N.D.

14  Cal. 2013); *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011)

15  ("Courts have routinely found the numerosity requirement satisfied when the class comprises 40

16  or more members.").

17         Plaintiffs assert the proposed class here consists of "approximately 4,745 residential

18  properties."  (Doc. No. 47-1 at 12.)  While this number consists of properties, and not individuals,

19  assuming that each residence has at least one owner/occupier or renter, the proposed class would

20  consist of close to 5,000 people.  Moreover, defendant does not challenge this number.  Thus, it

21  would appear that if the deficiency with respect to the class definition discussed above were to be

22  corrected, numerosity would likely be satisfied in this case.

23               ii.   *Commonality*

24         Rule 23(a)(2) requires that there exists "questions of fact and law which are common to

25  the class."  Fed. R. Civ. P. 23(a)(2).  However, "[a]ll questions of fact and law need not be

26  common to satisfy the rule."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

27  Rather, "the plaintiff [must] demonstrate that the class members 'have suffered the same injury.'"

28  *Dukes*, 564 U.S. at 350 (quoting *Gen. Tel. Co. of Sw. Falcon*, 457 U.S. 147, 157 (1982)).  Absent

15

a showing of "common contentions," a class proceeding is not justified because common answers—capable of resolving "the validity of each one of the claims in one stroke"—cannot be generated. *Id.; see also Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) ("[C]ommonality requires that the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke.'").

According to plaintiffs, the potential class members here all share the same contention: defendant harmed them by allegedly releasing noxious odors into the community surrounding its rendering plant.  (Doc. No. 47-1 at 13.)  It is true that the two causes of action plaintiffs levy against defendant—nuisance and negligence—are both susceptible to common proof because they focus, for the most part, on defendant's behavior and not the behavior of the potential class members.

It is clear that the ascertainability and class definition issues discussed above overlap to a significant degree with the commonality determination. *See Briseno*, 844 F.3d at 1124, n. 4.  For the reasons discussed above in addressing ascertainability, the court concludes plaintiffs' have failed to meet their burden of establishing commonality.  Again, if this deficiency were to be cured through the submission of some evidence as to the source of the noxious order which is the subject of this action and the geographic area impacted thereby, it would appear to the undersigned that commonality could be established.

### iii.  *Typicality*

"The claims or defenses of the representative parties [must be] typical of the claims and defenses of the class." Fed. R. Civ. P. 23(a)(3).  They need not be clones; rather, all that is required is that the claims or defenses be "reasonably co-extensive." *Hanlon*, 150 F.3d at 1020 (The standard is a "permissive" one and requires only that the claims of the class representatives be "reasonably co-extensive with those of absent class members; they need not be substantially identical."); *see also In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1098 (C.D. Cal. 2015).  "The test of typicality 'is whether other members have the same or similar injury, whether other class members have been injured by the same course of conduct.'" *Hannon*

1   *v. Dataproducts Corp.*, 976 F.2d at 508 (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282

2   (C.D.Cal.1985)).  Typicality is not satisfied when a class representative is subject to defenses

3   atypical to the class.  *Ellis*, 657 F.3d at 984; *Hanon*, 976 F.2d at 508 (Typicality may be lacking

4   "if 'there is a danger that absent class members will suffer [because] their representative is

5   preoccupied with defenses unique to it.'") (quoting *Gary Plastic Packaging Corp. v. Merrill*

6   *Lynch, Pierce, Fenner & Smith, Inc*., 903 F.2d 176, 180 (2d Cir. 1990)).

7        Plaintiffs argue that their claims are typical of the class and any differences defendant now

8   is attempting to raise "are superficial and/or irrelevant to the typicality determination."  (Doc. No.

9   47-1 at 14.)  Plaintiffs assert that their injury and that of the class members originate from the

10   same course of conduct attributable to the defendant and claim that "[t]he named plaintiffs are

11   pursuing the same claims possessed by absent class members on the same legal theories."  (*Id.*)

12   Finally, plaintiffs maintain that no further showing is required and that typicality has been

13   satisfied.  (*Id.*)

14        Defendant argues that plaintiffs' claims and those of the putative class arise from a

15   multitude of events that posit different legal arguments necessary to establish defendant's

16   liability.  (Doc. No. 49 at 15.)  Further, defendant contends that plaintiffs have failed to establish

17   typicality because they do not explain "their own theory or theories of liability much less

18   demonstrate that they share the theory with the all members of the putative class."  (*Id.*)

19   Accordingly, defendant urges the court to deny plaintiffs' motion for class certification due to the

20   lack of supporting evidence presented.  (*Id.* at 16.)

21        As noted above, the movant for class certification bears the burden of proving that

22   certification is warranted.  *Comcast*, 133 S. Ct. at 1432; *Dukes*, 564 U.S. at 350.  The Supreme

23   Court has not specified the burden of proof borne by the plaintiff with respect to satisfying the

24   requirements of Rule 23 and lower courts have adopted divergent approaches with respect to that

25   burden**.**  *See Reyes v. Netdeposit, LLC*, 802 F.3d 469, 484 (3d Cir. 2015) (applying the

26   preponderance of the evidence standard and rejecting the district court's application of an

27   absolute proof standard); *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 228–29

28   (5th Cir. 2009) (applying a preponderance of the evidence standard);  *see also Vega v. T-Mobile*

1    *USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009) (noting that, the burden of proof is "relatively

2    light").  The Ninth Circuit has not explicitly adopted the preponderance of the evidence standard

3    in this regard, though some district courts within the Circuit have recognized this as the trend.

4    *See Smilovits v. First Solar, Inc.*, 295 F.R.D. 423, 427 (D. Ariz. 2013) (noting that, the Ninth

5    Circuit has not adopted a particular approach, but that at least four circuits apply a preponderance

6    of the evidence standard and observing "[t]his standard appears to be the trend in federal courts,

7    and 'merely requires that [plaintiffs] demonstrate that it is more likely than not that a particular

8    requirement of Rule 23 [ ] has been satisfied.'" (quoting *Shepherd v. Babcock & Wilcox of Ohio*,

9    No, C-3-98-391, 2000 WL 987830, at *1 n.5 (S.D. Ohio Mar. 3, 2000))).

10          Assuming that the preponderance of the evidence standard applies to this inquiry, it has

11   nonetheless been recognized that "sometimes it may be necessary for the court to probe behind

12   the pleadings before coming to rest on the certification question," and certification is proper only

13   if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have

14   been satisfied."  *Dukes*, 564 U.S. at 350–51.  Thus, where plaintiffs provide a conclusory

15   statement that their claims are typical of the class and that the injuries arise from the same course

16   of conduct by the defendant, the court may look to the complaint to ascertain whether typicality

17   has been satisfied.  *See Shook v. El Paso County*, 386 F.3d 863, 968 (10th Cir. 2004) (noting that,

18   in conducting its own rigorous analysis, "the court must accept the substantive allegations of the

19   complaint as true, although it 'need not blindly reply on conclusory allegations which parrot Rule

20   23' and 'it may consider the legal and factual issues presented by plaintiff's complaints.'").

21          Here, the proposed class includes "all persons who were owners/occupiers and renters of

22   residential property within 1.5-miles of Defendant's rendering plant at any point between May 12,

23   2011 and the date the Class is certified."  (Doc. No. 47-1 at 9.)  Named plaintiffs Donna and

24   Allen Conroe and Kimberly Tapscott-Munson purportedly reside within 1.5 miles of the

25   rendering plant.  (Doc. No. 49 at 5.)  While the degree and impact of the alleged injury may vary

26   depending on where within the impacted radius each class member lives, the basic nature of the

27   injury is likely to be the same and will have arisen from the defendant's alleged conduct

28   involving the emission of noxious odors.  Thus, were plaintiffs to cure the deficiency noted above

with respect to ascertainability and class definition, the undersigned believes that typicality would

likely also be satisfied at least with respect to the issue of defendant's liability.

### iv. *Adequacy of Representation*

Plaintiffs seeking class certification must also show that they "will fairly and adequately

protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "To determine whether named

plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named

plaintiffs and their counsel have any conflicts of interest with the other class members and (2)

will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the

class?'"  *Ellis*, 657 F.3d at 985 (quoting *Hanlon*, 150 F.3d at 1020).  "An absence of material

conflicts of interest between the named plaintiffs and their counsel with other class members is

central to adequacy and, in turn, to due process for absent members of the class."  *Rodriguez v.*

*West Publ'g Corp.*, 563 F.3d 948, 959 (9th Cir. 2009) (citing *Hanlon*, 150 F.3d at 1020).

Accordingly, "[c]lass certification will be inappropriate if fundamental conflicts of interest are

determined to exist among the proposed class members."  *Allied Orthopedic Appliances, Inc. v.*

*Tyco Healthcare Grp., L.P.*, 247 F.R.D. 156, 177 (C.D. Cal. 2007).

Plaintiffs allege that they have "vigorously advanced the claims of the class and will

continue to do so." (Doc. No. 47-1 at 14.)  Plaintiffs assert that before bringing this case, they

retained counsel with substantial experience in litigating similar cases.  (*Id.*)  Further, plaintiffs

maintain that they have complied with discovery requests, have provided deposition testimony,

and have assisted counsel with investigation in connection with this action.  (*Id.*)

Defendant maintains that the named plaintiffs cannot adequately represent the putative

class because they cannot identify the location of the facility "or the source, frequency, or degree

of odor they purport to have suffered." (Doc. No. 49 at 16.)  For example, according to

defendant, "Ms. Conroe testified that she had never been to the facility, driven by it, does not

know what it looks like, does not know any of the companies around it, does not know the

direction of the plant from her house, or which way the wind blows from the plant, does not recall

telling anyone the odor originated from Darling." (*Id.* (citing Donna Conroe Dep. (Doc. No. 49-

6) at 19:19–20:2, 23:13-24, 31:22–32:6, and 36:2-9).)  Additionally, defendant points out,

1    plaintiff Allen Conroe testified at his deposition that he had no personal knowledge or facts to

2    support the allegation that the odors came from Darling.  (*Id.* (citing Allen Conroe Dep. (Doc. No.

3    49-2) at 19:7-18 and 32:3-7).  Defendant contends that plaintiff Mr. Conroe could not even testify

4    how often the odors occurred (e.g., weekly, daily, monthly) or whether the odor was better or

5    worse or continuous or intermittent since 1981.  (*Id.* at 17 citing Allen Conroe Dep. (Doc. No. 49-

6    2) at 14:3-16, 21:20–22:11, 25:11-25, 25:24–26:3, and 27:20–28:1).  Defendant states that

7    plaintiff Tapscot-Munson "also could not specify the details of her odor accusation."  (*Id.* (citing

8    Kimberly Tapscott-Munson Dep. (Doc. No. 49-3) at 24:22–25:4).)

9          Plaintiffs respond that "the Ninth Circuit has never imposed a knowledge requirement on

10   class representatives at the certification stage."  (Doc. No. 53 at 8) (citing *Trosper v. Styker Corp.*,

11   No. 13-cv-0607-LHK, 2014 WL 4145448, at *42 (N.D. Cal. Aug. 21, 2014)).  Rather, plaintiffs

12   maintain that where district courts within the Ninth Circuit have imposed a knowledge standard

13   as to the named plaintiffs in a class action, the threshold has not been high and only a

14   "rudimentary understanding" of the action and "a demonstrated willingness to assist counsel in

15   the prosecution of the litigation" has been required.  (*Id.*) (quoting and citing *Trosper*, 2014 WL

16   4145448, at *42, *In Re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 120 (C.D. Cal. 2007) and *In*

17   *re Tableware Antitrust Litig.*, 241 F.R.D. 644, 649 (N.D. Cal. 2007)).  Plaintiffs maintain that

18   "[d]efendant asks for the sort of detailed understanding of the facts of the case that named

19   plaintiffs are not required to have."  (*Id.*)  Finally, plaintiffs assert that they will adequately

20   represent the class because there are no conflicts of interest and their counsel will vigorously

21   litigate the case on behalf of the putative class.  (*Id.*)

22         Although a demanding knowledge requirement on the part of named plaintiffs is not

23   imposed, "[b]ecause class representatives serve as a guardian of the interests of the class, the

24   representatives must have some minimal familiarity with the litigation."  *In re Tableware*

25   *Antitrust Litig.*, 241 F.R.D. at  649 (citing *Burkhalter Travel Agency v. MacFarms Int'l, Inc.*, 141

26   F.R.D. 144, 153 (N.D. Cal. 1991)); *see also Mendez v. C-Two Group, Inc.*, Case No. 13-cv-

27   05914-HSG, 2015 WL 8477487, at *6 (N.D. Cal. Dec. 10, 2015).  The representatives cannot

28   "blindly rely on counsel to the extent he lacks familiarity with the case."  *In re THQ, Inc. Sec.*

1  *Litig.*, No. CV 00-1783AHM(EX), 2002 WL 1832145, at *6 (C.D. Cal. Mar. 22, 2002).

2  Accordingly, class certification has been denied "in flagrant cases, where the putative class

3  representatives display 'an alarming unfamiliarity with the suit.'"  *Id.* (quoting *In re Frontier Ins.*

4  *Grp., Inc. Sec. Litig.*, 172 F.R.D. 31, 46 (E.D.N.Y. 1997)).

5         Here, defendant maintains that the named plaintiffs have never been to the facility.

6  However, in the court's view it cannot fairly be said that the named plaintiffs lack an

7  understanding of where the offending odor emanates from.  Specifically, the named plaintiffs

8  demonstrated some knowledge of where defendant's plant is generally located and that the odor

9  in question originates from there.  (Doc. Nos. 49-2 at 7; 49-3 at 4.)   In any event, unfamiliarity

10  with the defendant is not the type of "alarming unfamiliarity with the suit" that would be

11  sufficient to defeat class certification.  *See In re THQ, Inc. Sec. Litig.*, 2002 WL 1832145, at *7

12  (C.D. Cal. Mar. 22, 2002) (noting that, plaintiffs' unfamiliarity with the names of six of the seven

13  defendants was not sufficient to defeat class certification).  Thus, at least general knowledge of

14  where the defendant's plant is located or where the odor stems from is sufficient.

15         Moreover, each of the named plaintiffs has expressed an understanding of the underlying

16  theory of the case, that defendant's operations at the rendering plant release noxious odors into

17  the air.  (Doc. Nos. 49-2 at 4; 49-3 at 4; 49-6 at 3.)  Notably, plaintiff Kimberly Tapscott-Munson

18  testified at her deposition that, "it is such an offensive odor it makes you immediately sick to your

19  stomach or you need to flee inside." (Doc. No. 49-3 at 3.)  This is sufficient for purposes of

20  establishing adequacy of representation.  *See In re Tableware Antitrust Litig.*, 241 F.R.D. at 649–

21  50 (finding that, plaintiffs adequately represented the class because despite their lack of detailed

22  understanding of the facts of the case, plaintiffs understood the underlying theory of the action:

23  "that plaintiffs overpaid for tableware due to the exclusion of Bed, Bath & Beyond from the

24  market.").

25         Plaintiffs have also indicated that they are willing to protect the interests of the class.  For

26  example, when asked why he chose to become a plaintiff in the lawsuit, Allen Conroe testified

27  that he wanted to be

28  /////

> a representative for the ones involved in the complaint and because of the problems that we're having in our neighborhoods.  As far as the smell goes and the things we have to deal with that I feel shouldn't be, that I didn't create or have any doing with creating it.

(Doc. No. 49-2 at 4.)  While plaintiffs have not conducted their own investigations or filed other complaints against defendant, they have spoken with neighbors, and as indicated have complied with discovery requests, provided deposition testimony, and assisted counsel with the investigation.  (Doc. No. 47-1 at 14.)

Accordingly, were the deficiencies with respect to ascertainability and class definition to be adequately addressed, on the present record the court would conclude that the named plaintiffs have sufficient familiarity with the case to serve as adequate representatives for the putative class.

### d.   *Rule 23(b)(3)*

Certification under Rule 23(b)(3) is permitted when "the questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is [deemed to be] superior to other available methods for fairly and efficiently adjudicating the controversy."  *Dukes*, 564 U.S. at 362 (quoting Fed. R. Civ. P. 23(b)(3)); *see also Tyson Foods, Inc. v. Bouaphaeko*,—U.S. —, —, 136 S. Ct. 1036, 1045 (2016).  "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 622, whereas the superiority requirement demands courts "assess the relative advantages of alternative procedures for handling the total controversy" in order to determine that a "class action is the 'superior' method of resolution."  Fed. R. Civ. Pro. 23(b)(3), Advisory Committee's Note; *see also Pointer v. Bank of Am. Nat'l Ass'n*, No. 2:14-cv-0525 KJM-CKD, 2016 WL 696582, at *8 (E.D. Cal. Feb. 22, 2016).  Below, the court will address these two requirements in the context of the pending motion.

#### i.   *Predominance*

Rule 23(b)(3) requires a plaintiff to show "(1) that the existence of individual injury resulting from the alleged . . . violation . . . [is] capable of proof at trial through evidence that is common to the class rather than individual to its members; and (2) that the damages resulting from that injury [are] measureable on a class-wide basis through use of a common methodology."

1    *Comcast*, 133 S. Ct. at 1430.  Rule 23(b)(3)'s predominance requirement is more demanding than

2    the commonality requirement of Rule 23(a).  *Id.* at 1432; *Abdullah v. U.S. Sec. Assocs., Inc.*, 731

3    F.3d 952, 963 (9th Cir. 2013).  However, the rule does not demand that all issues be common, but

4    rather only that common issues *predominate* over individual issues.  *Id.* at 964.  For example,

5    where liability can be proved on a class-wide basis but proof of damages may depend on

6    individual determinations, certification is not necessarily precluded.  *Leyva v. Medline Indus. Inc.*,

7    716 F.3d 510, 514 (9th Cir. 2013); *see also Jiminez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167–68

8    (9th Cir. 2014).  When deciding if a plaintiff has satisfied Rule 23(b)(3), a court must "consider

9    [ ] all factors that militate in favor of, or against, class certification."  *Vinole v. Countrywide*

10   *Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009) (citation omitted).

11          Plaintiffs argue that common issues of fact and law predominate here because the two

12   underlying causes of action—nuisance and negligence—both largely premise liability on

13   objective standards concerning defendant's behavior.  (Doc. No. 47-1 at 16–17.)  Plaintiffs

14   contend the "substantial" and "unreasonable" elements of a nuisance claim are judged against an

15   objective standard, and thus, are independent of the idiosyncratic sensitivities of the individual

16   potential class members.  (*Id.* at 16.)  Plaintiffs also assert, in regard to their negligence claim,

17   that the issue of what duty defendant owed to potential class members is an issue of law that does

18   not require individualized determination.  (*Id.* at 17.)  While defendant argues otherwise, the court

19   agrees that such objective determinations as will be required in this action are potentially well

20   suited for class treatment where common evidence can be presented, and that the duty of care

21   defendant owes to the putative class members is "a question of law for the court" under California

22   law.  *Lockheed Martin Corp. v. Superior Court*, 29 Cal. 4th 1096, 1106 (2003).

23          Defendant argues that establishing liability in this case will require individualized proof to

24   determine the source of the odor.  Defendant also contends that the odor in question may instead

25   come from other nearby plants or other sources or practices such as those identified by Dr.

26   Bowser, including trucks, routes, leaks and spills, unloading operations, rendering materials, as

27   well as drainage and rainfall.

28   /////

1  The court is persuaded that factual inquiries required by both state law torts alleged here

2 are potentially capable of class wide proof through the use of AERMOD air modeling.

3 AERMOD can determine the frequency, intensity, and duration of odor contamination in

4 particular areas.  This data can be used to determine if (and when) defendant created a nuisance

5 by modeling if odors released by defendant crossed the nuisance threshold (i.e., reached a level

6 that would disrupt a reasonable person's enjoyment of his or her property).  It is certainly very

7 possible that the same data would also be capable of proving the causation and injury elements of

8 a nuisance claim.

9  Nonetheless, for the same reasons discussed above with respect to ascertainability, the

10 court concludes that plaintiffs have failed to satisfy their burden of establishing that Rule

11 23(b)(3)'s predominance requirement has been met here.[8]  *See Briseno*, 844 F.3d at 1124 n.4

12 (citing *Torres*, 835 F.3d at 1136–39 (9th Cir. 2016) (contention that a class definition was

13 overbroad and thus arguably contained members who were not injured addressed as an issue of

14 predominance under Rule 23(b)(3)).

15   ii. *Superiority*

16  When deciding if a class action is a superior method of adjudicating the claims, courts

17 consider the following factors:

18  (A) the class members' interests in individually controlling the prosecution or defense of

19   separate actions;

20 /////

21

22 [8]  Defendant argues that proving damages, or the nature and extent of any harm suffered, will
require individualized proof in this case.  Specifically, defendant contends that "the alleged

23 severity of the odor is personal to each property," damages will vary depending on whether the
particular plaintiff has a physical illness, and "[t]he alleged interruption of the enjoyment of

24 property varies per claimant based on the activities he or she enjoys, whether family are involved,
[and] the presence of outdoor recreational structures on the property."  (Doc. No. 49 at 23.)

25 Defendant asserts that these issues are, therefore, not conducive to class-wide proof.  It may be
that proving the severity or degree of impact the noxious odor has had on each member of a class

26 could require individualized proof to account for idiosyncrasies such as illnesses, distance, wind

27 patterns, and climate conditions to such an extent as to justify the bifurcation of liability and
damages.  However, because the pending class certification motion will be denied without

28 prejudice, the court need not reach the issue at this time.

1    (B) the extent and nature of any litigation concerning the controversy already begun by or

2    against the class members;

3    (C) the desirability or undesirability of concentrating the litigation of the claims in the

4    particular forum; and

5    (D) the likely difficulties in managing the class action.

6    Fed. R. Civ. P. 23(b)(3).

7    Here, defendant argues that there is already ongoing litigation being pursued on behalf of

8    area residents. (Doc. No. 47-1 at 24.)  Plaintiffs, however, point out that the litigation commenced

9    by "Concerned Citizens of West Fresno," although currently in mediation, has not made progress

10   and would not compensate the area residents for the alleged nuisance caused by defendant.  (Doc.

11   No. 47-1 at 8, n.2.)

12   The court agrees that in this case class litigation appears potentially superior to any other

13   forms of dispute resolution.  In the event an appropriate class can be identified, each class

14   member's claim would be too small to justify the litigation costs that would be incurred

15   individually and the basis for the claims of each class member would be identical.  It also does

16   not appear that any one class member would have a materially greater interest in controlling the

17   litigation.  Moreover, under those circumstances, if class certification were to be denied, the only

18   alternative for the putative class members would be to bring actions in their individual capacities,

19   which would waste the resources of the parties and the court.  Finally, individual actions would

20   have preclusive effect only as to the individual who brought such actions.  Thus, in the event that

21   the deficiencies with respect to ascertainability and class definition were to be cured, it would

22   appear that superiority could be established as well.

23   /////

24   /////

25   /////

26   /////

27   /////

28   /////

1

**CONCLUSION**

2

For the reasons stated above:

3

1.   Plaintiffs' Motion for Class Certification (Doc. No. 47) is denied without prejudice;

4

2.   Defendant's Motion to Strike the Resident Data Sheets (Doc. No. 51) is denied; and

5

3.   Defendant's Motion to Exclude the Reports of David Weeks and Dr. Timothy Bowser

6

(Doc. No. 52) is denied.

7

IT IS SO ORDERED.

8

Dated:   __**March 30, 2017**__

9

UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

26